**HOVEL v. KAUFMAN et al.　(No. 739–4331.)**

(Commission of Appeals of Texas, Section A. Feb. 10, 1926.)

**1. Insane persons ⬦➡70—Receivers ⬦➡138— Adjudging owner insane before sale of lands by receiver, appointed by judgment by consent of parties, would not operate to defeat sales or give probate court jurisdiction.**

Where, in district court, judgment by consent of parties had been entered appointing receiver for purpose of paying certain liens on land, fact that owner was adjudged insane, and that guardianship was open and pending at time lands were sold by receiver, would not operate to defeat sales or give jurisdiction to probate court.

**2. Receivers ⬦➡69—Judgment, by consent of parties, appointing receiver of land, held to have vested title in receiver, and to divest owner of title and right of possession.**

Judgment, entered with the consent of all parties, appointing a receiver for purpose of selling land and paying certain liens thereon, *held* to vest title in receiver with the right of possession thereof, and to divest owner of title as well as right of possession, except the qualified right to occupy house as provided in judgment.

**3. Judgment ⬦➡540 — Judgment, divesting or vesting title to land by court of competent jurisdiction, is binding on parties, unless vacated or shown to be void.**

Where court, rendering judgment, had competent jurisdiction to divest and vest title to land, its decrees in that respect are binding as to parties before it, unless vacated or shown to be void.

**4. Receivers ⬦➡69—Judgment, expressly vesting title to lands in receiver, repels assumption that he was invested with nothing of more dignity than right of possession.**

Fact that judgment, appointing receiver of lands, expressly declared that he was to be vested with title, repels assumption that he was to be vested with nothing of more dignity than right of possession.

**5. Trespass to try title ⬦➡38(1)—Plaintiff, in suit in trespass to try title, has burden of proving title or right of possession in himself.**

Rev. St. 1925, art. 7382, does not vary the rule that plaintiff, in suit in trespass to try title, has burden of proving title or right of possession in himself.

**6. Trespass to try title ⬦➡11—Plaintiff, in suit in trespass to try title, undertaking to prove claim by proof of common source, must show that his title is superior to that claimed by defendant.**

Whenever a plaintiff, in suit in trespass to try title undertakes to sustain his claim of title by proof of common source, he must show, in order to make a prima facie case, not only that both he and defendant claim title under common source, but also that title which plaintiff claimed is superior to that claimed by defendant, and that plaintiff holds such title, in view of Rev. St. 1925, art. 7382.

**7. Trespass to try title ⬦➡44—Trial court properly instructed verdict for defendant, in suit in trespass to try title, where plaintiff failed to show title.**

Where plaintiff, in suit in trespass to try title, failed to show by evidence introduced that she held title to the land, defendant was not placed under necessity of introducing any proof, and trial court properly instructed verdict for defendant.

Error to Court of Civil Appeals of Fourth Supreme Judicial District.

Suit by Mary Louise Hovel against L. Kaufman and others. Judgment for defendants was affirmed by the Court of Civil Appeals (266 S. W. 858), and plaintiff brings error. Affirmed.

Lewright & Lewright and Geo. G. Clifton, all of San Antonio, for plaintiff in error.

Taliaferro, Cunningham & Moursund and W. B. Jack Ball, all of San Antonio, for defendants in error.

HARVEY, P. J. This is a suit in trespass to try title to certain lands in San Antonio, Tex., brought by plaintiff in error, Mary Louise Hovel, against L. Kaufman and another, defendants in error. Plaintiff in error is the widow of J. C. Hovel. The latter, in his lifetime, purchased the property in controversy from Julia Swart, who is shown to be the common source of title of all the parties herein. Subsequent to said purchase by Hovel and before the present suit was commenced, the property got in litigation, involving vendors' liens, mechanics' liens, and tax liens on the property, as well as other claims relating to the property, resulting in the rendition and entry of a final judgment in such suit by the district court of Bexar county.

This judgment shows on its face that, by a compromise agreement of all the parties to the suit, certain respective parties plaintiff,

---

⬦➡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

interveners, and codefendants of the Hovels recovered money judgment against J. C. Hovel and wife, for the amount of their respective claims, which several amounts are stated in the judgment, and the several liens on the property to secure the payment of such several amounts are established and declared foreclosed by the judgment. The judgment definitely shows that, as to all the above matters, the judgment is by agreement of all parties. The judgment further shows, upon its face, that upon the prayer of J. C. Hovel and wife, and one of their codefendants, whose claim and lien are established by the judgment as above stated, and with the consent of all of the other parties, the court appointed a receiver (in the language of the judgment), "with powers as hereinafter provided; and for the purpose of protecting the rights of the different parties to this suit, and carrying into effect the powers hereinafter conferred upon the said receiver, the title to (describing the property in controversy in the present suit) be and same is hereby vested in said receiver, who shall immediately take charge of all of said property, except the house and lot now occupied by the said J. C. Hovel and wife, who shall have the right to occupy said house and lot until the same shall be sold by the receiver, at which time the said J. C. Hovel and wife, Louise Hovel, shall surrender possession thereof to the purchaser of said property from the receiver."

The judgment then proceeds to specify the powers and duties of the receiver, a summary of which we here give as follows: (a) To ascertain and report to the court the amount of taxes due on the property; (b) to make a plot or plan of said land, and report same to the court for its approval, by which said property may be sold in lots; (c) after the approval of said plot, to sell the different lots or parcels at private sales for cash, or partly for cash and partly on time, on such terms as the receiver may deem proper, taking notes for the purchase money to be secured by the vendor's lien on the property sold; (d) to borrow a sufficient sum of money to pay the full amount herein adjudged to the plaintiff in the suit and two of the codefendants of the Hovels, specified by name, together with the taxes due upon said property, such lien to be secured by a paramount lien upon the entire property, or such part thereof as may be agreed upon between the lender and the receiver; (e) in case of sale by the receiver of any of the property, such sale shall pass all right, title, interest, and claims of all parties to the judgment to the parcels sold; (f) to sell, subject to approval by the court, all notes taken by the receiver, and transfer the lien securing the same, in case a purchaser can be found who will be willing to pay the face value of the notes; (g) to pay, from the proceeds arising from any sales made by the receiver under the powers conferred in the judgment, to the various parties to the suit, the amounts severally adjudged to them in the judgment as above stated, and to pay the taxes due on the land, and also a commission of 5 per cent. to the receiver on moneys received by him from such sales, and, when the above claims and debts have been fully paid, "the receiver shall account, under orders of such court, to said J. C. Hovel for all balance of said property, cash or security, which may remain in the hands of the receiver from the proceeds of said property, and shall make due report to this court in accordance with law." Some of the claims to be paid by the receiver are directed to be given priority of payment by the receiver because of the superiority of the liens securing same. The judgment does not, by its terms, direct the issuance of execution against the Hovels for the collection of any of the amounts adjudged against them, nor is there any express provision to the effect that the Hovels shall be liable to pay any unpaid balance of the several amounts adjudged against them which may remain after the receiver has exhausted the said property.

In pursuance of such judgment the receiver took charge of the property and thereafter sold it to the defendants in error, in pursuance of the terms of the judgment, and executed deeds therefor. Such sales were reported to the court by the receiver and were confirmed by the court, although it does not appear that such actions were required by the terms of the judgment.

No question is made here as to the validity of said judgment. After it was rendered J. C. Hovel was duly adjudged insane by the county court of Bexar county, and a guardian of his estate was appointed by the court, in proceedings instituted for that purpose. After Hovel had been so adjudged insane and a guardian of his estate appointed, and while Hovel still was insane and the guardianship pending, the above-mentioned sales of the land in controversy by the receiver to the defendants in error were made. Afterwards Hovel died without ever having regained reason.

[1] One of the contentions made here by plaintiff in error, in substance and effect, is that because of the fact that J. C. Hovel had been duly adjudged insane, and a guardianship of his estate was open and pending at the time the lands were sold to defendants in error by the receiver in pursuance of said judgment of the district court, the latter court had thereby lost jurisdiction over said property, and that exclusive jurisdiction over same was in the probate court, under the terms of the Constitution of this state, and that therefore said sales by the receiver and his conveyances of the property to defendants in error were and are void. To such contention we cannot agree.

[2] After such judgment of the district court

was rendered, Hovel had no title remaining in him. Excepting a qualified right to occupy the dwelling house and lot, as provided in the judgment, he had no right to take or hold possession of the property. From the tenor of the judgment and the circumstances attending its rendition as revealed by the judgment itself, it appears that the receiver was vested with the title to the lands, and the right of possession thereof, for the purpose of providing immediate payment of the debts of Hovel which were established by the judgment. Such being the case, the judgment had effect to divest Hovel of the title to the lands, as well as the right to the possession thereof. Thaxton v. Smith, 40 S. W. 14, 90 Tex. 589.

[3, 4] But irrespective of the apparent purpose of the provisions of such judgment, we are inclined to the opinion that, considering the fact that the court rendering the judgment was a court having competent jurisdiction to divest and vest title to land, its decrees in that respect are binding on the parties before it, unless vacated or shown to be void. In this instance, if the receiver were intended to be invested merely with power to effect a transfer of the title from Hovel to purchasers as sales were made by the receiver, and to perform the other acts specified in the judgment, there was no occasion to declare him vested with the title as was done. The very fact that he was expressly declared to be vested with the title repels the assumption that he was invested with nothing of more dignity than a right of possession coupled with a power.

In view of the disposition we have made of the matter which we have discussed, it becomes unnecessary to consider what would have been the effect of the deeds executed by the receiver, if the latter had been invested merely with a ministerial or administrative power over the property.

We come now to another question presented by the plaintiff in error. Upon the trial of this case in the lower court, the plaintiff in error, for the purpose of proving title in herself, introduced evidence showing that she held all the title to said lands which may have remained in J. C. Hovel after the above-described judgment of the district court was rendered.

For the purpose of showing common source, she introduced in evidence the said deed from Julia Swart conveying the lands in controversy to J. C. Hovel, which deed antedated the above-described judgment of the district court; and, for the same purpose, she introduced in evidence the said judgment and the deeds executed thereunder by the receiver to the defendants in error. For the same purpose, that of showing common source, the plaintiff in error also introduced in evidence the report of said sales, to defendants in error, made by the receiver to said district court, and the order of said court confirming same. The plaintiff in error also introduced in evidence, for all purposes, the judgment of the county court of Bexar county adjudging J. C. Hovel insane, and the order appointing guardian of his estate, and the qualification of the guardian under such appointment. All such proceedings of the county court occurred, as we have stated, after said judgment of the district court was rendered, but before any of said sales were made by the receiver to the defendants in error, and before said deeds were executed by the receiver to defendants in error on said sales were confirmed by said court. And as we have stated above, J. C. Hovel was shown still to be insane, and said guardianship pending, when each of the last-named transactions occurred. Plaintiff in error thereupon rested her case, and the defendants in error introduced no evidence. The trial court peremptorily instructed a verdict for defendants in error, and rendered judgment in their favor.

In addition to complaining of such action of the court on the grounds which we have already discussed and disposed of, plaintiff in error also assigns error on this further ground. She insists that, having been introduced in evidence by the plaintiff in error for the sole purpose of proving common source, and not having been introduced by defendants in error, the said first-mentioned judgment of the district court cannot properly be considered for any other purpose. Upon this hypothesis she bases a contention that, since such judgment and the receivers' deeds thereunder cannot be considered as evidence of title in the defendant, she proved a prima facie case entitling her to judgment, when she showed that she holds under a chain of title, regular on its face, emanating from a common source with that of the defendant.

There is dictum contained in the opinion of the Supreme Court in the case of Ogden v. Bosse, 24 S. W. 798, 86 Tex. 336, which supports the contention of plaintiff in error on this point. One of the grounds upon which the writ of error was granted in the present case was the conflict of the opinion of the Court of Civil Appeals herein with that of the Ogden Case on this point. After due consideration, we have concluded that the language of the Ogden Case, so far as it does not accord with the views hereinafter expressed, should not be accepted as stating the correct rule on this point.

[5] The statute relative to common source (article 7382 of Revised Statutes of 1925) does not vary the well-established rule that a plaintiff, in a suit in trespass to try title, has the burden of proving title or right of possession in himself, before he becomes entitled to a judgment. True, the statute says, in effect, that evidence, introduced by the plaintiff for the purpose of proving that defendant's claim of title emanates from the common source,

"shall not be evidence of title in the defendant unless offered in evidence by him"; but this statutory provision in no wise precludes a consideration of such evidence for the purpose of determining if the plaintiff has discharged the burden of proving that he really has title to the land as he claims to have. Plainly he does not. discharge this burden, unless he show, prima facie at least, that the title, which is presumed to have been one time in the common source did in fact pass from the common source into the plaintiff's chain of title and remained there till it reached the plaintiff.

[6] The correct rule is that, whenever a plaintiff, in a suit in trespass to try title, undertakes to sustain his claim of title by proof of common source, he must show, in order to make a prima facie case for himself, not only that both he and the defendant claim title under a common source, but also must show that the title emanating from the common source which the plaintiff claims is superior to that claimed by defendant, and that plaintiff holds such title. The substance of this general rule has been repeatedly announced by the Supreme Court. Keys v. Mason, 44 Tex. 140; Sebastian v. Brown, 12 S. W. 986, 75 Tex. 291; Howard v. Masterson, 13 S. W. 635, 77 Tex. 41; Rice v. Railway Co., 26 S. W. 1047, 87 Tex. 90, 47 Am. St. Rep. 72; Simmons Hardware Co. v. Davis, 27 S. W. 62, 87 Tex. 146. Although in all of the cases which have come to our notice, including those cited above, the declaration of this general rule partakes more or less of the nature of dictum, we think the rule so announced is essentially sound and in harmony with the statute to which we have referred.

[7] The plaintiff in error having failed to show, before she rested her case, that she held the title to the land, the defendant in error was not placed under the necessity of introducing any proof at all, and the trial court properly instructed a verdict for the latter.

We therefore recommend that the judgment of the Court of Civil Appeals affirming the judgment of the trial court be affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.