ROBERT HEJL V. ANNA K. WIRTH ET AL.

No. A-7833. Decided January 25, 1961.
Rehearing Overruled March 8, 1961.
(343 S.W. 2d Series 226)

*Charles G. Trenchman,* of Austin, for petitioner.

*Emmett Shelton,* of Austin, for respondents.

MR. JUSTICE GREENHILL delivered the opinion of the Court.

The question here is whether the last call in a deed shall be followed as a straight line or whether it is to be held to be a meander line and to run along the thread of a stream. The trial court held the call to be a meander line as a matter of law. That judgment was affirmed by the Court of Civil Appeals, one judge dissenting, 334 S.W. 2d 498. We here reverse the judgments of both courts and hold that as a matter of law the call is for a straight line.

The suit was brought by Mrs. Wirth and others as an ordinary

trespass to try title suit to recover title and possession to a tract of 72 acres of land in Travis County. The plaintiffs did not claim title by limitations. The defendant Hejl answered with a plea of not guilty and with pleas of limitation. He filed a quitclaim to all of the land described in the plaintiffs' petition except the 6 acres, more or less, indicated on the map below. That 6 acres in the subject of this litigation.

■ It has long been the rule in this State that in a trespass to try title suit, the plaintiff must recover upon the strength of his own title. Kaufman v. Shellworth, 64 Texas 179; Hovel v. Kaufman, Com. App. 1926, 280 S.W. 185; Davis v. Gale, (1960), 160 Texas 309, 330 S.W. 2d 610. If the plaintiff under the circumstances fails to establish his title, the effect of a judgment of take nothing against him is to vest title in the defendant. The rule is a harsh one, but it also has been well established as a rule of land law in this State. French v. Olive, (1887), 67 Texas 400, 3 S.W. 568; Permian Oil Co. v. Smith (1934), 129 Texas 413, 73 S.W. 2d 490, 111 A.L.R. 1152.

Hodge is a common source of title. To establish her title to the land in question, the plaintiff Wirth introduced a deed from Hodge to Miller, her predecessor in title, dated 1878. A scaled map of the area in dispute is set out in the opinion of the Court of Civil Appeals, 334 S.W. 2d 500, at 501. The diagram set out below is not drawn to scale but is set out for illustrative purposes and so that the calls in the deed under which Mrs. Wirth et al. claim may be more easily followed.

The description in the deed from Hodge to Miller reads:

"Beginning in bed of Bear Creek; thence North 1330 vs. to Northeast corner of J. M. Hodge tract; thence West 510 vs. to

corner in bed of Bear Creek; thence down the same to corner in same about 40 varas below the mouth of Little Bear Creek; thence South 38 East 560 vs. to the beginning, containing 72 acres of land more or less * * * ."

At the time of the conveyance, Hodge owned the land on both sides of Big Bear Creek. Hence he retained ownership of that portion to the west of the tract conveyed above. Subsequently Hodge conveyed that property on the west side. The question is whether the last call which begins in Big Bear Creek and goes "thence south 38 East 560 vs. to the beginning" in Big Bear Creek is a straight line or whether it is a meander line which follows Big Bear Creek to the place of beginning.

Both parties presented motions for instructed verdict at the close of the evidence. Hejl's motion was denied and Mrs. Wirth's was granted. The judgment for Mrs. Wirth et al., as above indicated, rests on the holding that, as a matter of law, the last call in the description is a meander line and that therefore the six acres was conveyed to Miller by the deed from Hodge.

In support of that holding, responsents Wirth et al. cite the following cases: Dutton v. Vierling, Texas Civ. App., 152 S.W. 450, no writ history; Stover v. Gilbert, 112 Texas 429, 247 S.W. 841; State v. Atlantic Oil Prod. Co., Texas Civ. App., 110 S.W. 2d 953, writ refused; Strayhorn v. Jones, 157 Texas 136, 300 S.W. 2d 623; County of St. Clair v. Lovingston, 90 U.S. 46; 23 L. Ed. 59, and Runion v. Alley, 19 Ky. 268, 39 S.W. 849.

It is the position of petitioner Hejl and of the dissenting Justice of the Court of Civil Appeals that as a matter of law the call should be run as a straight line and that the six acres was not conveyed to Miller. In support of that position, they cite McKee v. Stewart, 139 Texas 260, 162 S.W. 2d 948, and Lewallen v. Mays, 265 Ky. 1, 95 S.W. 2d 1125.

None of the cited Texas cases is in point. The property line in controversy in Stover v. Gilbert, supra, began on the northeast bank of the Brazos River and was marked out by seven course and distance calls introduced as follows: "Thence down the river the following courses and distances, viz.:" The line in controversy in Dutton v. Vierling, supra, began at a pecan tree on the bank of Brady Creek and ran: "thence S 79°25' east down Brady Creek 111.28 vrs. to a stake * * * ." Three sets of field notes were involved in State v. Atlantic Producing Co., supra. The controversial calls began on the north bank of the Sabine River in each set.

The next calls in the respective sets of notes were "Thence West with said river at 338 vrs.," "thence up said river with its meanders," and "thence West with said river * * * ." Each of the calls was followed by some thirty course and distance calls which when applied on the ground, ran generally along the course of the river. The line in controversy in Strayhorn v. Jones, supra, formed by a number of short course and distance calls was introduced by the words, "Thence following the meanderings of White River and the Salt Fork of the Brazos to a point * * * ."

In all of these Texas cases, the property lines were formed by course and distance calls which contained, or were introduced by, words such as "down the river," "down the creek," "with said river," "with the meanders of the river," or similar phrases. There is no such language in or introduction to the call forming the line in controversy in this case. The line in controversy in McKee v. Stewart, supra, neither began nor ended in a creek. That decision is not controlling on this point. The Strayhorn and McKee cases discuss the "strip or gore" doctrine, but the Respondents Wirth et al. do not here contend that the property in question passed from Hodge to Miller under that doctrine.

We do not regard either of the cited Kentucky cases as persuasive in the fact situation before us. In Runion v. Alley, supra, the court held that a conveyance containing a descriptive call which began at "a stake on the Sandy River" and ran "thence up Sandy River, nearly south, 29 poles 1 link, to a sycamore" conveyed to the thread of the stream. The court said: "It is a well-settled rule of law that a conveyance of land to a water course, and thence with the same, passes title to the thread of the stream, unless otherwise provided or indicated." The holding is harmonious with the Texas decisions analyzed above. It was held in Lewallen v. Mays, supra, that a line beginning on the north bank of a creek and running "thence up same N. 69 E. 32 poles to a beech and elm at the mouth of the branch near a road" should be run as a straight line and not a a meander line. Considering the Texas decisions analyzed above, it hardly seems likely, in the absence of other controlling circumstances, that a Texas court would agree with that decision.

County of St. Clair v. Lovingston, 23 Wall. 46, 90 U.S. 46, is closer in point. The government there awarded to veterans certain lands. In 1814, it gave Jarrot the tract in question. The description in the grant began at a designated point which was on the bank of the Mississippi River. It continued: "Thence S. 5° W. 160 poles to a point in the river * * * ." The call of South

5 degrees West approximated the bank of the river at that time. The government surveyed the land for another soldier in 1815, a year later, and the description (coming from the opposite direction) was "thence N. 5° E., up the Mississippi River and binding therewith * * * ." Subsequently, substantial land was accumulated by accretion to Jarrot's side of the river; and the question was whether Jarrot's land extended to the river or was limited to the straight line, "S. 5° W. 160 poles" from the place of beginning as set out in his deed; i.e., whether the government intended to retain whatever land there was between that line and the river. The court held that the river and not the straight line constituted the west boundary line of the tract. The court said:

"It may be considered a canon in American jurisprudence, that where the calls in a conveyance of land, are for two corners at, in, or on a stream or its bank, and there is an intermediate line extending from one such corner to the other, the stream is the boundary, unless there is something which excludes the operation of this rule by showing that the intention of the parties was otherwise." 90 U.S. at 64.

The court then analyzed the fact situation before it to show that it would be unreasonable to conclude that the line was not to run with the course of the river.

It will be noted that while the court stated it to be a canon of American jurisprudence that the stream is the boundary of a tract of land when a line begins and ends in or on a stream or its bank, the cannon was qualified in this language: "* * * unless there is something which excludes the operation of this rule by showing that the intention of the parties was otherwise."

We may accept the canon set out in the Lovingston case. But we hold that this case comes within the qualification stated in the rule. We think it clear that in this case, as a matter of law, there is "something which excludes the operation of this rule by showing that the intention of the parties was otherwise." Those distinguishing circumstances and affirmative manifestations of intent are these:

1. Unlike the Lovingston case, the calls in Big Bear Creek do not consist merely of two calls, one of which begins and the other ends in the creek. The first call here which begins in the creek says, "thence down the same [Big Bear Creek] to corner in same about 40 varas below the mouth of Little Bear Creek." The parties thus deliberately went down the creek with a meander call for a

certain distance to a corner. If they had intended for the entire western and southern boundary to be the thread of the creek, they could have said from the first point in the creek: "thence down the same to the place of beginning."

2. After having come down Big Bear Creek with its thread to a corner below Little Bear Creek, the call does not continue "down the same," or "with the same," or words of similar import, but makes a call directly to the place at beginning without regard for the creek. Having demonstrated that they knew how to come down the creek to the point below Little Bear Creek, the parties or their attorneys placed in the deed a description which plainly and unambiguously called for a straight line to the place of beginning. Incidentally, the call below Little Bear Creek was to a "corner." While we would not rest the matter on the use of the word "corner," its use might be considered an additional circumstance that the parties intend the point to be a corner and not simply a passing call on the way down the thread of the stream.

As stated above, the Respondents Wirth et al. do not contend that the 6 acres in question passed from Hodge to Miller under the "strip or gore" doctrine. We therefore express no opinion on that question.

■ The presumption that the grantor conveyed to the bed of a stream belonging to the grantor is a rebuttable one. It is a rule of construction used to assist in arriving at the intention of the parties. It may be rebutted by words which clearly indicate an intention to restrict the grant to points other than the thread of a stream. 8 American Jurisprudence 762, Boundaries, section 23. We hold that such intention is manifest here as a matter of law. The call, "thence down the same to corner in same about 40 varas below the mouth of Little Bear Creek," is a meander call. The last call, "hence south 38 East 560 varas to the beginning" is a boundary line and does not follow the center line of the creek.

Under this construction of the Hodge deed to Miller under which Mrs. Wirth and others claim, we do not reach the question of title by adverse possession to the tract in question.

Under our construction of the deed from Hodge to Miller under which the plaintiffs Wirth et al. claimed, the plaintiffs in this trespass to try title suit failed to establish their title to the 6 acres in dispute. The judgments of the courts below are therefore reversed and judgment is here rendered for the petitioner Hejl.

Opinion delivered January 25, 1961.

ASSOCIATE JUSTICE STEAKLEY not sitting.

MR. CHIEF JUSTICE CALVERT concurring.

I concur in the judgment entered. My difference with the majority lies in our approach to the problem.

The ultimate problem, as in all cases involving the interpretation of deeds, is one of ascertaining the intention of the parties to the Hodge-Miller deed. Smith v. Allison, 157 Texas 220, 301 S.W. 2d 608; Garrett v. Dils Co., 157 Texas 92, 299 S.W. 2d 904; 19 Texas Jur. 2d, 391, 455, Deeds, Secs. 107, 145. The preliminary problem is one of evidence and may be stated thusly: What rules of evidence should be used in ascertaining the intention of the parties to the deed?

As I understand their opinion, the majority approve the rule quoted from the opinion of the Supreme Court of the United States in County of St. Clair v. Lovingston, 90 U.S. 46, 64, as follows:

"It may be considered a canon in American jurispurdence, that where the calls in a conveyance of land, are for two corners at, in, or on a stream or its bank, and there is an intermediate line extending from one such corner to the other, the stream is the boundary, unless there is something which excludes the operation of this rule by showing that the intention of the parties was otherwise."

That is a novel rule in the jurisprudence of this state and I seriously question the wisdom of our approving it. Although announced in the Lovingston case in 1874, the rule has never been approved by the courts of this or any other state and it has not been cited with approval by any federal court since 1904. I doubt that we can live with the rule.

The effect of the Livingston rule is to create a presumption that any line, marked out by the descriptive calls in a deed, beginning and ending in or on the bank of a stream, is intended by the parties to be a meander line, and, in the absence of evidence of a contrary intent, it will be run as such. Whether the evidence of a contrary intent must be found in the deed or may be extrinsic is not stated. In this case the only evidence of intent considered by the majority is found in the deed. In the Lovingston case only extraneous facts were mentioned by the court as evidence of in-

tent. What evidence may be considered by the court, a question unanswered in the majority opinion, is but one of many trouble-some and vexing problems which approval of the Lovingston rule will bring. An analysis of the distinctions made by the majority between the two cases will disclose some of them.

The majority note only two points of distinction. These distinctions are based entirely on the number, arrangement and wording of the calls in the two deeds. Aside from the fact that the rule as announced in Lovingston recognizes no qualification based on the number or sequence of the calls which precede or form the the line beginning and ending in or on the bank of a stream— that is, whether the critical line precedes or follows another which expressly meanders the stream—and expressly recognizes that it will apply when the line runs from one "corner" to another "corner" in or on a stream, the distinctions noted by the majority are less than convincing. To illustrate: Suppose the field notes in the deed in the Lovingston case were exactly the same but the critical line cut off 50 acres in the bend of a river or stream, would we then look only to the face of the deed, as the majority do in this case, and say that because of the number, arrangement and wording of the calls the line should be run as a meander line and the deed should be held to convey the 50 acres? I doubt it. Or suppose the field notes in the Hodge-Miller deed were exactly the same but the critical line cut off one-tenth of an acre instead of six acres, would we then say that the number, arrangement and wording of the calls established as a matter of law that the parties intended the critical line to be a boundary rather than a meander line and thus exclude the one-tenth of an acre from the conveyance? I doubt it. If we would not make those holdings, the distinctions made in the majority opinion are immaterial distinctions and will surely haunt us in future cases.

I would reject the rule of the Lovingston case and would continue to adhere to the rules long followed by the courts of this state in the interpretation of deeds. Those rules are settled and familiar and, on the whole, present fewer problems. When the descriptive calls in a deed are clear, admit of no ambiguity, and clearly identify the land conveyed, the lines of the property conveyed should be run precisely according to the descriptive calls unless a latent ambiguity develops when they are run on the ground. Richey v. Miller, 142 Texas 274, 177 S.W. 2d 255, 257; McKee v. Stewart, 139 Texas 260, 162 S.W. 2d 948, 950; 19 Texas Jur. 2d 455-457, Deeds, Sec. 145. If an ambiguity develops when the lines are run on the ground, recourse may be had to any competent and relevant evidence to ascertain the intention of the

parties and resolve the ambiguity. 19 Texas Jur. 2d 487-495, Deeds, Sec's. 165-169; Texas Law of Evidence by McCormick and Ray, Vol. 2, Sec. 1687.

The field notes in the Hodge-Miller deed are clear and unambiguous. The land they describe is clearly identifiable. Respondents do not claim that a latent ambiguity develops when the field notes are put on the ground. Neither do they contend that the six acres were impliedly conveyed under the strip and gore doctrine. The judgment entered is therefore a correct judgment and I concur in it.

Opinion delivered January 25, 1961.

Rehearing overruled March 8, 1961.