**Harold JORDAN, et ux., Appellants,**

**v.**

**Drew O. BACON, et al., Appellees.**

**No. 09 86 202 CV.**

Court of Appeals of Texas, Beaumont.

Oct. 8, 1987.

Rehearing Denied Oct. 28, 1987.

J.C. Zbranek, Zbranek, Hight & Cain, P.C., Liberty, for appellants.

Glen L. Kirby, Kountze, for appellees.

OPINION

BROOKSHIRE, Justice.

Appeal in a suit originally pleaded in the traditional form of a trespass to try title proceeding. An instructed verdict was given by the district judge at the close of the plaintiffs' case. When the plaintiffs rested, the defendants immediately rested. One of the main contentions of the Appellants, who were the defendants below, is

that the plaintiffs (Appellees) failed to prove their title under traditional trespass to try title law, either from the sovereignty of the soil or from a common source of title.

The actual land in controversy, referred to as the disputed land, is a 4.16–acre tract which was alleged to have been a part of a 58.9965–acre tract out of the B.B.B. & C.R. R. section 130, A–101, Hardin County.

It is correct that the Appellees did not deraign their title from the sovereignty of the soil. However, there was introduced into evidence the plaintiffs' Exhibit No. 1 through and including Exhibit No. 7 which were before the jury without objection. In addition, there was an Exhibit No. 8, described as an "Acknowledgement of Tenancy", which the trial judge permitted into evidence before the jury, to which the Appellants leveled an objection.

Plaintiffs' Exhibit No. 1[1] is of special importance and compelling relevancy. It is a plat showing the R.O. (Richard Oscar) and Emma Jordan estate consisting of 161.-047 acres out of the B.B.B. & C.R.R. Section 130, Abst. 101, Hardin County. It is a survey made in May of 1973 by W.K. Hilliard, a registered public surveyor of the State of Texas, his surveyor number being 1328. This plat, dramatically and in detail, by metes and bounds, shows basically 3 tracts of land, designated as Tract 1, Tract 2, and Tract 3. These 3 tracts were a partition of the R.O. and Emma Jordan Estate. In turn, Tract 3 is divided into two parcels. On this plat, Tract 1 consists of 53.682 acres and is clearly outlined in a bright canary yellow color. Tract 2 consists of different acreage of 53.682 acres and is bordered by a bright blue color. Tract 3 is outlined in red. Tract 3 is composed of two parcels. Parcel No. 1, being the upper parcel, contains 43.054 acres, and Parcel No. 2 of Tract 3—Parcel No. 2 being the lower parcel—consists of 10.629 acres.

We determine it is clear that Tract 1, Tract 2, and Tract 3 were owned by Emma Jordan, who was also known as Mary Emma Jordan. Indeed, she owned the 161.047 acres as her separate property and

in her own separate right. She received the same through a general warranty deed from Serazan Guedry by deed of March 7, 1921. At that time, Emma Jordan was the wife of R.O. (Richard Oscar) Jordan.

The deed from Serazan Guedry to Emma Jordan is plaintiffs' Exhibit # 3. Plaintiffs' Exhibit # 2 is a list of instruments to be introduced as evidence in the trial. There was a definitive affidavit of heirship which set out clearly the heirs of Mary Emma Jordan and Richard Oscar Jordan. They were married only one time and that was to each other. They adopted no child or children, either legally or by estoppel or by any other means. They had surviving them only the following children: Oscar Bradley Jordan, William Jackson Jordan, and Beatrice Jordan. Beatrice Jordan, at the time of the affidavit of heirship, was the wife of J.B. Grimes. There was another son, Richard Morris Jordan. Morris predeceased both his mother and his father. He never married. He had no child or children surviving him.

Richard Oscar Jordan died intestate on April 29, 1959. His only surviving heirs at law, again, were: Oscar Bradley Jordan, William Jackson Jordan, and Beatrice Jordan Grimes. Emma Jordan predeceased her husband. She died intestate on March 9, 1955.

After the death of both parents, the record clearly demonstrates that Oscar Bradley Jordan, William Jackson Jordan, and Beatrice Jordan Grimes were the only heirs at law to the 161.047 acres.

On July 2, 1973, the three heirs at law executed an instrument, titled "Warranty Deed of Partition." Beatrice got Tract 1, Oscar B. obtained Tract 2, and William J. Jordan acquired Tract 3. Tract 1 was the westernmost tract, Tract 2 was in the middle, and Tract 3 was the easternmost tract.

Firstly, by contract for deed and then by general warranty deed, William J. Jordan and his wife, Jessie O. Jordan, conveyed to Drew Bacon and Cheryl Bacon of Newton County, for the consideration of $26,548.43, their Tract 3 consisting of parcel 1 and

1. Plaintiffs' Exhibit No. 1 is attached to this opinion.

parcel 2. The metes and bounds descriptions in the deed to Drew Bacon and wife are the same as to Tract 3 in the "Warranty Deed of Partition." In addition to that Tract 3, being 53.683 acres, an additional 5.3135 acres of land out of what was known as the Emma West 10.627 acres were conveyed by William Jordan and wife, Jessie Jordan, to Drew Bacon and wife, Cheryl. Hence, William Jordan and wife conveyed to Drew Bacon and wife the 43.-054 acres of land as surveyed in May, 1973, by W.K. Hilliard, which was parcel 1 of their Tract 3. William and wife also conveyed the 10.629–acre tract of land which was parcel 2 of their Tract 3 to Drew Bacon and wife. Parcel 2 was also known as the Medena Guedry tract, using the same field notes as set out in the "Warranty Deed of Partition".

By deraigning the title and checking the field notes and the instruments in evidence, we determine that Drew Bacon and wife obtained all of the right, title and interest of William J. Jordan and wife, Jessie O. Jordan, to their Tract 3, as set out in the "Warranty Deed of Partition" between the heirs of R.O. and Emma. Emma Jordan was the common source. Drew Bacon and wife obtained an additional small third tract containing 5.3135 acres.

Drew and Cheryl Bacon and Jessie Jordan were the plaintiffs, although Cheryl was not named in the original petition. Harold Jordan, one of the original defendants, testified that his father was Oscar Bradley Jordan. Oscar Bradley Jordan, insofar as the deed records and other documentary evidence are concerned, had no interest in Tract 3 after the "Warranty Deed of Partition". The disputed 4.16–acre parcel is part of Tract 3. In substance, Harold Jordan, who was also known as Harold Clark Jordan, testified that all of the land involved in the suit—the claimed and disputed 4.16 acres—as well as the Tract 3 of 53.683 acres, were all in the B.B.B. & C.R. R. section 130. Harold Jordan also stated unequivocally that his "grandpa" and "grandma" owned all of the land involved. This was the 161.047 acre tract. He gave as the names of his grandpa and grandma as: "R.O. and Emma, Richard Oscar and Mary Emma."

In his deposition testimony, Harold (Clark) Jordan took the position of being an heir of his father, Oscar Bradley Jordan. Oscar Bradley's Tract 2 was inherited from his mother, (Mary) Emma Jordan and R.O. Jordan. Harold (Clark) Jordan claimed he acquired 12.92 acres which came by way of inheritance from his deceased father. We determine that a common source of title has been shown in the Richard Oscar and Mary Emma Jordan estate and also by way of the partition deed, called a "Warranty Deed of Partition", dated July 2, 1973, and executed, acknowledged and delivered by Beatrice Jordan Grimes, Oscar B. Jordan and William J. Jordan. We think that a careful analysis of the entire record and the detailed documentary evidence, including partition deeds, warranty deeds, deeds, affidavits of heirship, plats and maps, bear this out, especially when undergirded and buttressed by the sworn testimony of Harold (Clark) Jordan, who was called under the adverse party rule.

We acknowledge that a plaintiff, in a trespass to try title suit, has the initial burden of proving that said plaintiff has title to the land in litigation by at least one of four methods:

"(1) record title from the sovereignty of the soil down to himself; (2) title from a common source, *i.e.*, a source from which the defendant also claims title; (3) title by limitation; or (4) a presumptive title arising from possession of the property at a time antedating the defendant's possession. *Land v. Turner*, 377 S.W.2d 181, 183 (Tex.1964); *Walters v. Pete*, 546 S.W.2d 871, 875 (Tex.Civ.App.—Texarkana 1977, writ ref'd n.r.e.)...."

But we determine that *Adamson v. Doornbos*, 587 S.W.2d 445 (Tex.Civ.App.—Beaumont 1979, no writ) is meaningfully different from the case subjudice. *Adamson v. Doornbos* is not controlling because (1) the originating source deed in the plaintiffs' (Adamsons') predecessors' chain of title was a mere quitclaim. A quitclaim is not a conveyance or a muniment of title. In *McMahon v. Fender*, 350 S.W.2d 239, 240

(Tex.Civ.App.—Waco 1961, writ ref'd n.r. e.), the court held:

> " 'A quitclaim deed does not of *itself* establish any title in those holding under it. The quitclaim passes the interest of the grantor in the property, and for the quitclaim to be a conveyance, title in the grantor must be shown. ...' " (Emphasis theirs)

Secondly, in *Adamson, supra,* the district judge, in a bench trial, ruled that the defendants proved that they, themselves, and those through whom they claimed, were actually in possession of the land and used the land for more than 10 years prior to the date of any alleged title emanating from any alleged common source. It is important to note that the trial court held that the Doornbos defendants had proved their 10 years possession. Furthermore, the trial court additionally ruled that the Doornbos defendants proved that they, themselves, and those under whom they claimed, acquired title to the lots in question under the 10 year statute of limitations since the same defendants, and those under whom they claimed title, had been in actual, continuous, exclusive, adverse possession for 38 years.

Simply put, Drew Bacon and his wife were not claiming under a quitclaim; and, more importantly, Harold Jordan and wife did not prove that they were in possession of the land in dispute and used the land for more than 10 years; furthermore, Harold Jordan, et ux, did not prove that they acquired the title to the disputed 4.16 acres under the 10 years statute of limitations by showing they were in continuous, exclusive, adverse and hostile possession for 10 years or more or 38 years. Indeed, Harold and Helen proved no period of possession.

In *Hejl v. Wirth*, 161 Tex. 609, 343 S.W. 2d 226 (1961), the Supreme Court wrote that, in a trespass to try title suit, the plaintiff must recover upon the strength of his own title. If the plaintiff fails to establish his title, the effect of a take nothing judgment against plaintiff is to vest title in the defendant. But the Supreme Court also acknowledged that this rule is a very harsh rule. We agree. And we respectful-ly ask the Supreme Court to reexamine and rethink the same in a procedurally correct manner.

But we stress that, in the case at bar, the Appellees have established their title and they have recovered upon the strength of their own title. *Hejl, supra.*

We want to make it abundantly clear that we do not decide the issue of common source of title on the following pleadings which were brought forward by Harold Jordan because we acknowledge that the burden is upon the plaintiff in a trespass to try title suit to show the common source of title. Nevertheless, there is, in the record, the Appellants' Bill of Exception No. 1. This Bill No. 1 showed a proceeding before the Justice of the Peace Court, Precinct No. 6, in Hardin County, as well as the appeal thereof to the County Court of Hardin County. Certain issues were joined concerning the "Acknowledgement of Tenancy." The County Court found to the effect that the said "Acknowledgement of Tenancy" was obtained either by fraud or overreaching. By these proceedings before the Justice of the Peace Court, as well as the County Court, it is clear that the same "Acknowledgement of Tenancy" covered the same 59.9956–acre tract of land out of the B.B.B. & C.R.R. section 130 purchased by Drew Bacon and wife. Drew Bacon won the contest in the Justice of the Peace Court.

In the County Court of Hardin County, Harold Jordan and wife, Helen Jordan, specifically and affirmatively pleaded that the acreage they were claiming, being a 4.16–acre tract of land, was definitely out of the 43.054–acre tract of land described in the "Warranty Deed of Partition" of record in Vol. 594, page 642, of the Deed Records of Hardin County and being in, and a part of, the B.B.B. & C.R.R. Survey Section 130. Then Harold Jordan and wife, Helen, by their own pleadings, described the 4.16–acre tract by detailed metes and bounds. Indeed, the deed of partition, by reference, was incorporated in the pleadings in the County Court by Harold Jordan and wife, Helen.

We decide that the metes and bounds description, as set out by Harold and Helen Jordan, fits exactly and entirely within the 43.054–acre parcel of land, being the upper parcel 1 of Tract 3. This pleading of Harold and Helen Jordan clearly undergirds and supports our conclusion that a common source of title is shown, although we do not decide this issue on the pleadings and Bill of Exception filed by Harold and Helen Jordan.

■ However, the learned and able trial judge would not permit this lengthy defendants' bill of exception No. 1 in evidence. It was kept out by way of motion in limine. That was error because the jury found in the County Court trial that "the execution of P–2 [the 'Acknowledgement of Tenancy'] was obtained by fraud." Harold and Helen Jordan should have been given the opportunity to attempt to prove that this Bill No. 1 might have induced the jury to find that the so-called "Acknowledgement of Tenancy" was obtained by fraud in the trespass to try title suit in the District Court.

It is interesting to note that, in the Justice of the Peace Court, Harold Jordan and wife, by written answer, averred that they owned and claimed the title to the land which was the basis of the original forcible entry and detainer suit. Furthermore, in writing, Harold and Helen Jordan contended that the "Acknowledgement of Tenancy" was obtained by fraud and overreaching to the extent that same was null and void.

In the County Court of Hardin County, between the same parties and involving the same "Acknowledgement of Tenancy", the jury found that the execution of the "Acknowledgement of Tenancy" was obtained by fraud. The court instructed the jury that:

"By the term 'Fraud' is meant any means of cunning or artifice used to cheat or deceive another. It must include a false statement of a material fact made for the purpose of inducing a bargain which representation is relied upon by the other party."

Hence, we decide that the verdict of the jury, concerning the "Acknowledgement of Tenancy", when coupled with the District court's ruling on the Appellants' Exhibit # 1, being their Bill of Exception # 1, constituted error. We think the doctrine of collateral estoppel applied, or at least could have applied, had the jury had before it the Bill of Exception. We quote from the Supreme Court, in *Wilhite v. Adams*, 640 S.W.2d 875, 876 (Tex.1982):

"Under a plea of collateral estoppel, essential issues of fact determined and adjudged by a court of competent jurisdiction *are binding in a subsequent action between the same parties and those who stand in privity with them. Kirby Lumber Corp. v. Southern Lumber Co.*, 145 Tex. 151, 196 S.W.2d 387, 388 (1946). In other words, *this doctrine precludes the relitigation of identical issues actually litigated in a previous action, even though the subsequent action is based upon a different cause of action. Benson v. Wanda Petroleum Co.*, 468 S.W.2d 361, 362–3 (Tex. 1971). *Collateral estoppel does not require that all the issues in the subsequent action be the same as those in the prior suit. It merely precludes the same issues from being reurged.*" (Emphasis ours)

Having found error, we reverse and remand the case, as well, in the interest of justice.

REVERSED AND REMANDED.

**634**

EXHIBIT NO. 1

Plat Showing
R.O. & Emma Jordan Estate
161.047 Acres
B.B.B. & C. RR. Sec. No 130
Abst. 101
Hardin County, Texas

Scale: 1" = 100 varas

Surveyed May 1975 by W.K. Hilliard, Reg. Public Surveyor No. 1528

BURGESS, Justice, dissenting.

I respectfully dissent. The majority has found error, and it therefore, reverses and remands in the interest of justice. The error, however, has no relevance to the rendition of the judgment below. They found error in the proceedings before the jury, although the trial judge took the case from the jury. Instead, appellants' second point of error complaining of the trial court's denial of their motion for instructed verdict and the subsequent granting of appellees' similar motion should have been sustained.

In a trespass to try title suit, the plaintiff has the burden of proving title by one of four methods: (1) record title from the sovereignty of the soil, (2) title from a common source, *i.e.*, a source from which the defendant also claims title, (3) title by limitation, or (4) a presumptive title arising from possession at a time antedating the defendant's possession. *Adamson v. Doornbos*, 587 S.W.2d 445 (Tex.Civ.App.— Beaumont 1979, no writ). In the instant case, the appellees were seeking to prove record title. They, therefore, were bound by either of the first two methods. The

appellants did not plead record title to the land in dispute. They sought to prevail by limitations. Therefore, I believe that the appellees were forced to prove their title from the sovereign. The majority admits they did not. This failure to prove title results in a take nothing judgment against the appellees. *Hejl v. Wirth*, 161 Tex. 609, 343 S.W.2d 226 (1961). Under *Hejl*, it also results in vesting title in the appellants. As previously noted in *Ferguson v. Kelly*, 728 S.W.2d 397 (Tex.App.—Beaumont 1987, no writ) (Burgess, J., dissenting), I would deviate from the *Hejl* rule and enter only a take nothing judgment against the appellees without affirmatively entering a judgment in favor of the appellants. For the reasons stated, I respectfully dissent.