6-96-028-CV Long Trusts v. Dowd 













In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-02-00095-CV


______________________________





IN RE: ROY JON








 
 

Original Mandamus Proceeding







 
 



Before Morriss, C.J., Grant and Ross, JJ.

Opinion by Justice Ross



O P I N I O N


 Roy Jon, an inmate at the Telford Unit, Bowie County, petitions for a writ of
mandamus against Jack Carter, judge of the Fifth Judicial District Court. The real parties
in interest are Victor Tuatagola, Otis Bruce, Chauncey Miles, Rodney Dixon, and the Texas
Department of Criminal Justice-Institutional Division (TDCJ), defendants in the underlying
litigation. In that suit, Jon alleges that the individual defendants, employees of defendant
TDCJ, used excessive force against him which caused him to sustain serious personal
injuries and that they denied him access to proper medical care. 

 By this original proceeding, Jon seeks: 1) to compel Judge Carter to rule on certain
pretrial motions which Jon filed; 2) a ruling that Judge Carter abused his discretion for
granting a six-month delay in the proceedings at the State's request; and 3) to compel
Judge Carter to grant his motion for default judgment. 

 Mandamus relief is available only when the record establishes the trial court clearly
abused its discretion or violated a legal duty imposed by law and there is no adequate
remedy by appeal. In re Daisy Mfg. Co., 17 S.W.3d 654, 658 (Tex. 2000). 

 The record shows Jon filed a number of pretrial motions, including: 1) a motion to
compel discovery; 2) a "motion requesting disclosure," including a list of inmates in a

specified area of the prison, prison policies, and disciplinary records; and 3) a motion to
compel the State to disclose the current address of defendant Miles. Jon also filed a
motion to compel the appointment of counsel. 

 The real parties in interest filed a motion to dismiss Jon's petition, pursuant to
Chapter 14 of the Texas Civil Practice and Remedies Code. Section 14.003(d) specifically
provides that, on the filing of such a motion, the court "shall" suspend discovery pending
a hearing on the motion to dismiss. Tex. Civ. Prac. & Rem. Code Ann. § 14.003(d) (Vernon
Supp. 2002). Although subject to exceptions, the word "shall" in legislative enactments has
a clear mandatory connotation. Crickmer v. King, 507 S.W.2d 314, 317 (Tex. Civ.
App.-Texarkana 1974, no writ). The trial court was clearly within its authority to withhold
ruling on Jon's discovery motions, and Jon has demonstrated neither the violation of a
ministerial duty nor an abuse of discretion by the trial court in this regard. 

 Concerning the trial court's denial of Jon's motion to appoint counsel, we note there
is no federal or state constitutional or statutory right to have counsel appointed to represent
indigent parties in civil cases that is comparable to the right to such appointments in
criminal prosecutions. (1) Therefore, we find no violation of a ministerial duty or abuse of
discretion by the trial court in not granting Jon's motion to appoint counsel.

 Concerning the alleged six-month delay in the proceedings, there is a document in
the record, filed in the underlying litigation June 22, 2001, designating Curt H. Schwake,
Assistant Attorney General, as attorney-in-charge for the defendants. A document titled
"Advisory to the Court" was filed October 1, 2001, in which Jennette E. DePonte, Assistant
Attorney General, states she will be on maternity leave and requests that the trial court not
set any hearings in the case until her return in April 2002. Jon filed a written objection to
any delay for this purpose. In the response filed in this mandamus proceeding, the real
parties in interest contend the Attorney General's office is the attorney of record in the case
and that the filing by DePonte merely advised the court of the assistant attorney general's
extended absence.

 Jon's complaint is moot. The time period of the delay requested, i.e., ending April 1,
2002, had expired at the time Jon's petition for writ of mandamus was filed. Further, the
record does not show the trial court took any action or refused to make any further settings
in the case based on the filing of the "Advisory." Thus, Jon fails to show how he was
harmed by any delay in the proceedings, and even if harmed, why he has no adequate
remedy by appeal. 

 Jon also contends he is entitled to a default judgment. The real parties in interest
state in their response they filed an answer to Jon's suit, along with a motion to dismiss
pursuant to Chapter 14 of the Texas Civil Practice and Remedies Code. This is confirmed
by the docket sheet, a copy of which is attached to Jon's petition. (2) As Jon is clearly not
entitled to a default judgment, the trial court did not violate a ministerial duty or abuse its
discretion by not granting the requested default. 

 Finding no basis for the issuance of the requested writ, the petition for writ of
mandamus is denied. 



 Donald R. Ross

 Justice


Date Submitted: August 1, 2002

Date Decided: August 2, 2002


Do Not Publish

1. The United States Supreme Court has not announced a right to appointment of
counsel in civil cases generally. However, the court has held an indigent person does have
a due process right to appointment of counsel in certain civil cases. See, e.g., Lassiter v.
Dep't of Soc. Servs., 452 U.S. 18, 31-32, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981) (certain
proceedings involving termination of parental rights); In re Gault, 387 U.S. 1, 41, 87 S.Ct.
1428, 18 L.Ed.2d 527 (1967) (certain juvenile delinquency proceedings). In determining
whether due process requires appointment of counsel for an indigent person in a civil case,
the Supreme Court in Lassiter balances three factors-the private interests at stake, the
government's interest, and the risk the procedures used will lead to an erroneous
decision-against the presumption there is a right to counsel only where the indigent may
lose his or her personal freedom. Lassiter, 452 U.S. at 27. 


 Texas has created a statutory right to counsel in certain civil cases. See, e.g., Tex.
Fam. Code Ann. § 51.10(f) (juvenile proceedings), § 107.013(a)(1) (Vernon Supp. 2002)
(mandatory appointment of attorney ad litem for indigent parent opposing a suit to
terminate the parent-child relationship). Texas law also gives district judges and
constitutional county court judges discretion to appoint counsel for an indigent person in
a civil case. Tex. Gov't Code Ann. §§ 24.016, 26.049 (Vernon 1988). A judge of a
statutory county court is given "all other powers, duties, immunities, and privileges provided
by law for county court judges." Tex. Gov't Code Ann. § 25.0004 (Vernon Supp. 2002).
2. Generally, docket sheets are not evidence. Rodriguez v. State, 834 S.W.2d 592,
595 (Tex. App.SHouston [1st Dist.]), pet. granted in part & ref'd in part; remanded in part
on other grounds, 844 S.W.2d 744 (Tex. 1992). However, "[a] docket entry may supply
facts in certain situations, but it cannot be used to contradict or prevail over a final judicial
order. N-S-W Corp. v. Snell, 561 S.W.2d 798, 799 (Tex. 1977) (citing Matthews v. Looney,
132 Tex. 313, 123 S.W.2d 871 (1939); Hamilton v. Empire Gas & Fuel Co., 134 Tex. 377,
110 S.W.2d 561 (1937); Ex parte Rains, 113 Tex. 428, 257 S.W. 217, 220 (1923); Stark
v. Miller, 63 Tex. 164 (1885)). 


e statutes allow one who can prove adverse possession for the requisite time periods and
circumstances to be adjudged the owner of the property. See Masonic Bldg. Ass'n of Houston, Inc.
v. McWhorter, 177 S.W.3d 465, 469 (Tex. App.--Houston [1st Dist.] 2005, no pet.).

 To establish title through adverse possession, the possession must unmistakably assert a
claim of exclusive ownership in the occupant. Rick v. Grubbs, 147 Tex. 267, 214 S.W.2d 925, 927
(1948); Perkins v. McGehee, 133 S.W.3d 287, 293 (Tex. App.--Fort Worth 2004, no pet.). Though
most of the cases focus on "exclusive ownership," the caselaw reflects that adverse possession
constitutes a "claim" until the claim is adjudicated and transformed into ownership of record. The
very nature of adverse possession is that a person takes possession of property adversely to other
ownership rights, and is allowed to prevail later in court because of continuous adverse use over time
without the possession being broken by the true owner.

 The concept of adverse possession allows a person to claim title to real property presently
titled in another. For the purpose of this analysis, that does not mean the claimant already has the
title. Session was not an owner of record. We also note that the diligence described in the cases set
out above was not diligence to find trespassers on the property, but to ensure that all owners of
record were properly notified. Even for record owners, however, the right to redeem the property
by timely payment of the taxes or to timely challenge the tax deed were the proper remedies--ones
which could be lost by inaction. (5)

 Session, as a claimant of limitations title through adverse possession, was served by posting. 
He argues that this is inadequate because his open and notorious possession of the land entitled him
to personal service, and because the taxing entity made no attempt to determine whether the land was
actually being possessed by anyone besides the record owner. In the few recent cases involving tax
sales and claims of adverse possession, we find no stated requirement that a taxing entity is required
either to search on the ground for trespassers who might conceivably have some inchoate interest
in the property, or to personally serve such claimants. See, e.g., Jordan v. Bustamante, 158 S.W.3d
29, 39 (Tex. App.--Houston [14th Dist.] 2005, pet. denied). Compare Norris v. Harry Hott &
Assocs., Inc., 612 S.W.2d 630, 632 (Tex. Civ. App.--Dallas 1981, no writ) (involving individuals
with record interest in land).

 Session Not a Defendant? Session argues that the tax sale did not affect his limitations title,
because of the effect of Section 34.01(n) of the Texas Tax Code. That section governs tax deeds and
reads as follows:

 (n) The deed vests good and perfect title in the purchaser or the purchaser's assigns
to the interest owned by the defendant in the property subject to the foreclosure,
including the defendant's right to the use and possession of the property, subject only
to the defendant's right of redemption, the terms of a recorded restrictive covenant
running with the land that was recorded before January 1 of the year in which the tax
lien on the property arose, a recorded lien that arose under that restrictive covenant
that was not extinguished in the judgment foreclosing the tax lien, and each valid
easement of record as of the date of the sale that was recorded before January 1 of the
year the tax lien arose. The deed may be impeached only for fraud.


Tex. Tax Code Ann. § 34.01(n) (Vernon Supp. 2006) (emphasis added). Session argues that,
because Section 34.01(n) focuses on the interest "owned by the defendant," the only interest that was
transferred was that of the owners of record, Howard Smith and Audrey Smith. We disagree, since
the record owners were not the only defendants in the tax suit.

 The September 23, 2002, tax suit judgment lists defendants as including "the unknown owner
or owners of the described property . . . and any and all other persons, including adverse claimants,
owning or having any legal or equitable interest in . . . the [disputed] property, who were duly served
as required by law by means of citation by posting . . . ." The judgment further states that the
"above-named Defendant(s) who were served with citation . . . were the owner(s) of record of the
below-described land or were claiming some right, title, or interest thereto at the time of the
institution of this suit . . . . " The judgment additionally recites that an attorney ad litem was
appointed for the defendants cited by posting and that the attorney ad litem filed an answer on behalf
of those defendants. Session was clearly included by description within those defendants.

 A tax foreclosure suit must include the record owners, American Realty Corp. v. Tinkler, 107
S.W.2d 627 (Tex. Civ. App.--San Antonio 1937, writ ref'd); lienholders, State Mortgage Corp. v.
Groos, 12 S.W.2d 260 (Tex. Civ. App.--San Antonio 1929, writ dism'd); and all parties owning or
claiming any interest in the property. Ball v. Carrall, 42 Tex. Civ. App. 323, 92 S.W. 1023
(Galveston 1906, writ ref'd). This tax suit appears to have done that.

 Not the Same Property? Session also argues separately that Woods was not entitled to
summary judgment because he did not prove conclusively that the disputed property was contained
within the property description of the tax deed. From Session's answer to Woods' counterclaim,
however, it is clear that Session claims at worst that he was a co-tenant with Woods, and at best that
the tax sale, while valid against the named defendants, did not convey Session's interest. 

 Session's petition contains a metes and bounds description of the disputed property, which
was evidently created for purposes of defining his adverse possession claim. (6) In his response to
Woods' motion for summary judgment, Session claimed that Woods had not provided any proof that
the property subject to the tax sale encompassed the property that Session claimed. We disagree.

 Woods stated in his affidavit attached to the motion for summary judgment that Woods had
paid an abstract company to do a title search on the disputed property and that only Woods and the
Smiths were revealed in the record as having an interest in the property. Session, in his response,
offers no proof to the contrary; he simply relies on his position that Woods provided no evidence that
the disputed property is within Woods' tract.

 There is evidence that the property obtained through the tax sale encompassed the disputed
property. There is no evidence to the contrary. Indeed, Session brought this lawsuit only in an
attempt to obtain ownership against Woods' claim that the disputed property was located within the
property Woods had purchased. Under these facts and pleadings, we must conclude that Woods
adequately proved that the property described by the tax deed had been transferred and properly filed
over two years before Session filed suit, and in the absence of any evidence that the disputed
property was located outside the property Woods purchased in the tax sale, we must also conclude
this contention is without basis. 

 Not an Attack on the Tax Deed? Session also argues that, because this lawsuit is not really
an attack on the tax deed, Section 33.54 is inapplicable. That argument is not viable. Session filed
this suit in trespass to try title against the tax sale purchaser. The title being "tried" is that conveyed
by the tax deed. See Patton, 125 S.W. at 7-8.

 Limitations Bars Session. Notwithstanding all of Session's arguments, Section 33.54 of the
Texas Tax Code prevents Session from now challenging Woods' title to the land purchased at the
tax sale. An action for title to property may not be maintained against the purchaser of the property
at a tax sale unless the action is commenced "before the first anniversary of the date that the deed
executed to the purchaser at the tax sale is filed of record." Tex. Tax Code Ann. § 33.54(a)(1). 
Moreover, a person may not commence an action challenging the validity of the tax sale after the
time set out by Section 33.54(a)(1). Tex. Tax Code Ann. § 34.08(b) (Vernon 2001); see Jordan,
158 S.W.3d at 39-40. Well over two years had elapsed after the tax deed was recorded before
Session brought his suit. Woods conclusively proved that limitations applied.

 Even if Session, at some time, could successfully have proved an adverse possession title,
he was required to file such an action within the period set out by the absolute language of the
statute. Because he failed to do so, Session's claims came too late.

 Woods adds an argument that we should affirm on an additional ground: because he showed
that Session did not meet the statutory requirements to challenge the validity of the tax sale. A
person may not "commence" an action against the purchaser of the property at a tax sale unless he
or she deposits into the registry of the court an amount equal to the delinquent taxes, penalties, and
interest specified in the foreclosure judgment, plus all costs of the tax sale, or alternatively, files an
affidavit of the inability to do so. Tex. Tax Code Ann. § 34.08(a)(1), (2) (Vernon 2001). Session
did neither. Because Session's suit was necessarily an attack on the tax sale, this alternative ground
also supports the rendition of summary judgment in favor of Woods. See Jordan, 158 S.W.3d at
39-40.

 We affirm the judgment.


 Josh R. Morriss, III

 Chief Justice


Date Submitted: October 4, 2006

Date Decided: November 2, 2006


 
1. The tax delinquency sale was held to recover taxes owed to the Carlisle Independent School
District and Rusk County. Tax deeds reflect that two tracts were sold; each was a one-half undivided
interest in the 22.6 acres.
2. In a trespass to try title action a plaintiff recovers on the strength of his or her own title. 
Plumb v. Stuessy, 617 S.W.2d 667 (Tex. 1981); Land v. Turner, 377 S.W.2d 181 (Tex. 1964); Hejl
v. Wirth, 161 Tex. 609, 343 S.W.2d 226 (1961); Woodrow v. Henderson, 783 S.W.2d 281, 282 (Tex.
App.--Texarkana 1989, no writ). Recovery can be based on proof of (a) title through regular chain
of conveyances from the sovereign, (b) superior title out of a common source, (c) title by limitations,
or (d) unabandoned prior possession of the land. Plumb, 617 S.W.2d 667.
3. This is not surprising because Session had attempted to purchase the property from Woods
shortly after the tax sale, but they could not reach an agreement. Thus, a discovery rule would not
help Session, even if one were to apply to Section 33.54 of the Texas Tax Code. See Tex. Tax
Code Ann. § 33.54 (Vernon 2001).
4. The affidavits on which he bases his claim are dated in August 2005 and state that Session
had been in actual and exclusive possession of the property for at least fifteen years. 
5. See Patton v. Minor, 103 Tex. 176, 125 S.W. 6, 7-8 (1910) (late suit against tax deed by
adverse claimant barred, even if adverse claimant could establish limitations title against previous
owners); Cook v. Slusky, 659 S.W.2d 110 (Tex. App.--Houston [14th Dist.] 1983, no writ) (defense
not asserted within three-year redemption period, not entitled to have issues submitted in trespass
to try title action); Hughes v. Price, 229 S.W.2d 79, 80 (Tex. Civ. App.--Amarillo 1950, no writ)
(redemption impossible because adverse possession not proven).
6. There is no claim that the disputed property had ever been separately conveyed.