Reversed and Rendered and Opinion filed June 20, 2006









Reversed and Rendered and Opinion filed June 20, 2006.

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-04-00986-CV

____________

 

BRADFORD KILPATRICK, Appellant

 

V.

 

MARION JUDY
MCKENZIE AND RANDALL MCKENZIE, Appellees

 



 

On Appeal from the 405th
District Court

Galveston County, Texas

Trial Court Cause No. 03CV0592

 



 

O P I N I O N

This appeal stems from a bench trial in an
action for trespass to try title.  The
trial court rendered judgment in favor of the plaintiffs/appellees, who claimed
title by deed.  Challenging the adverse
judgment, the defendant/appellant asserts, among other things, that there is no
evidence to support the trial court=s finding that the
record title of the plaintiffs/appellees is traced back to the sovereign with a
clear chain of title. We reverse and render judgment in favor of the
defendant/appellant. 








I.  Factual
and Procedural Background

Each of the
parties to this suit claims title to property located in the Sandy Beach
Subdivision in Crystal Beach, Galveston County, Texas, more particularly
described as the West 42.3 feet of Lot 2, Block AL,@ as well as Lot 2,
Block AM@ and Lot 13, Block
AN@ (hereinafter the AProperty@).  Appellees Marion Judy McKenzie and Randall
McKenzie, plaintiffs in the trial court, claim title by deed filed of
record.  The McKenzies sued appellant
Bradford Kilpatrick, the defendant below. 
Kilpatrick filed a counterclaim seeking title by limitations. 

On or about September 23, 1995, Gladys
Meynig conveyed the Property to Marion McKenzie by quitclaim deed.  At the time of this conveyance, an inspection
of the Property revealed no evidence of anyone in possession.  The Property was vacant, unimproved real
estate.  Two months later, on November
29, 1995, this transaction was memorialized by a warranty deed.  On August 9, 2000, Marion McKenzie conveyed
the Property to her husband Randall McKenzie.                      

 Apparently, on February 10, 1994, J.C.
McKnight delivered a warranty deed to Kilpatrick that purported to convey
twelve lots or tracts of land, including the Property.  These twelve lots purportedly conveyed to
Kilpatrick were the subject of prior deeds that trace back to the filing of a
subdivision plat in 1985. 

In the beginning of 1995, Kilpatrick moved
a camper and bus onto a portion of the Property.  Though he did not live on the Property, he
periodically stayed there overnight. 
Kilpatrick apparently erected a power pole and stored materials on the
adjacent land, but he never fenced the adjacent property or attempted to
segregate it from the Property. 








On June 26, 1999, the McKenzies gave
written notice to all persons who claimed any record interest in the title to
the Property, notifying them to verify the validity of their claims.  Kilpatrick received this notice.  At that time, Kilpatrick had not placed any
structure on the Property.  Later,
however, Kilpatrick moved a house onto the Property.  The McKenzies notified Kilpatrick of their alleged
record title to the Property and told him that his title was not valid and
could not be traced back to anyone who owned the Property. The matter was not
resolved.

The McKenzies brought a trespass-to-try
title suit against Kilpatrick, who filed an answer alleging title to the
Property by limitations.  Kilpatrick also
asserted a counterclaim for the value of improvements.  Kilpatrick allegedly did not make these
improvements until he received notice of the McKenzies= title. 

Following a bench trial, the trial court
rendered judgment in favor of the McKenzies and entered findings of facts and
conclusions of law, specifically finding, among other things, the following:

(1) The Property was included in
the conveyance to Marion McKenzie from Gladys Meynig memorialized in a warranty
deed on November 29, 1995; 

(2) Marion McKenzie, by warranty
deed, conveyed the Property to her husband, Randall McKenzie on August 9, 2000;


(3) At the time of the conveyence
to Marion McKenzie, Gladys Meynig was the record holder the Property, which is
a subdivision in Galveston County, Texas and included in the 4.55 acre tract; 

(4) the record title owner of the
Property is Randall McKenzie pursuant to a warranty deed from Marion McKenzie
dated August 9, 2000; 

(5) The record title of Randall
McKenzie is traced back to the sovereign by a regular chain of conveyances; 

(6) Bradford Kilpatrick had actual
notice of the claims of Gladys Meynig and Marion McKenzie to the Property.  Kilpatrick also had constructive notice of
the claims of Marion McKenzie upon her recordation of the deed on September 23,
1995; 

(7) Kilpatrick had actual and
constructive notice to vacate the Property before commencing any improvements
thereon; 








(8) Kilpatrick did not openly,
notoriously, or continuously possess or maintain possession of the Property
prior to the demand made on him to vacate; 

(9) There is no evidence of any
chain of title to the Property from any grantor of Kilpatrick or prior grantor before
March 9, 1985; 

(10) There is no evidence that
either J.C. McKnight (who purportedly conveyed the Property to Kilpatrick) or
his purported grantors had any possession rights to the Property or adversely
possessed the Property; 

(11) Kilpatrick did not fence,
cultivate, or otherwise openly and notoriously maintain peaceful possession of
the Property; and 

(12) Kilpatrick
made all improvements to the Property with actual and/or constructive notice of
the claim of title of the McKenzies.  

II.  Issues
Presented 

Kilpatrick asserts
two points on appeal: 

 (1)    The
trial court erred in entering judgment in favor of the McKenzies with respect
to title to the Property because there is no evidence to support the trial
court=s finding that they have a clear
chain of title back to the sovereign; and 

(2)     The
trial court erred in failing to find in favor of Kilpatrick on his claim for
improvements under section 22.021 of the Texas Property Code.

                                         III.  Standard
of Review








Findings of fact
in a bench trial have the same force and dignity as a jury verdict, and thus
they are reviewed for legal sufficiency of the evidence under the same
standards applied to the appellate review of a jury=s findings.  Catalina v. Blasdel, 881 S.W.2d 295,
297 (Tex. 1994).  In determining whether
legally sufficient evidence supports the trial court=s findings of
fact, we consider the evidence in the light most favorable to the challenged
finding and indulge every reasonable inference that would support it.  See City of Keller v. Wilson, 168
S.W.3d 802, 822 (Tex. 2005).   We must
credit favorable evidence if a reasonable factfinder could and disregard
contrary evidence unless a reasonable factfinder could not.  See id. at 827.   We must determine whether the evidence at
trial would enable a reasonable and fair‑minded person to find the facts
at issue.  See id.   The factfinder is the sole judge of the credibility
of the witnesses and the weight to give their testimony.  See id. at 819.   Evidence is conclusive only if reasonable
people could not differ in their conclusions. 
See id. at 816. 

IV.  Analysis

A
trespass-to-try-title action is a procedure by which claims to title or the
right of possession may be adjudicated. Yoast v. Yoast, 649 S.W.2d 289,
292 (Tex. 1983).   A plaintiff must
recover upon the strength of his own title. 
Hunt v. Heaton, 643 S.W.2d 677, 679 (Tex. 1982); Land v.
Turner, 377 S.W.2d 181, 183 (Tex. 1964).  
Thus, in addressing Kilpatrick=s first issue, we
focus on the McKenzies= proof of title to the Property, and
examine every link in the chain of title.

Kilpatrick
contends that the trial court erred in rendering judgment in favor of the
McKenzies because they did not provide evidence of their chain of title back to
the sovereign.   More specifically,
Kilpatrick challenges the legal sufficiency of the evidence supporting the
trial court=s finding number five that the record
title of Randall McKenzie is traced back to the sovereign with a clear chain of
title. 

The trial court
found that the McKenzies traced their chain of title back to the sovereign by
the following chain of conveyances: 

(1)     State of Texas to Jones Shaw;

(2)     Judgment dividing Lots 1, 2, and 3 of the
Jones Shaw Survey, Lot 2 to W.C. Patton;

(3)     W.C. Patton, et al. to G.W. Hines, dated
April 5, 1911, filed for record April 17, 1911; 

(4)     G.W. Hines, et. ux., to W.D. Blalock, dated
December 14, 1921, filed for record May 8, 1922; 

(5)     W.D. Blalock, et. ux., to G.W. Hines, dated
May 2, 1924, filed for record May 8, 1924; 








(6)     G.W. Hines to Elizabeth Hines, dated June
16, 1925, filed for record July 8, 1925; 

(7)     Elizabeth Hines to Harold Hines, dated June
27, 1936, filed for record August 20, 1936; 

(8)     Harold Hines to Ona E. Bautier, dated
February 25, 1952, filed for record February 28, 1952; 

(9)     Ona E. Bautier to Gladys Meynig, dated
August 23, 1952, filed for record September 18, 1952; 

(10)    Gladys Meynig to Marion Judy McKenzie, dated
June 23, 1995, filed for record June 26, 1995; and

(11 )   Marion
Judy McKenzie to Randall McKenzie, dated August 9, 2000, filed for record,
Reference File #20042202, Film Code #XXX-XX-XXXX.  

A review of the
record reveals no evidence to support links (1) or (2), above.  The McKenzies did not offer any proof of
their chain of title for the period before 1911.   The first deed entered into evidence was
item (3), above, from W.C. Patton, Izora Patton, and L.G. Patton to G.W. Hines,
dated April 5, 1911, filed for record April 17, 1911.   Although the trial court=s findings of fact
and conclusions of law seem to indicate that the other two links in this chain
of title are a patent from the State of Texas to Jones Shaw, and a judgment
dividing Lots 1, 2, and 3 of the Jones Shaw Survey, conveying Lot 2 to W.C.
Patton, we cannot conclude that this evidence is sufficient to establish a
complete chain of title back to the sovereign. 
The judgment that allegedly divided the Jones Shaw Survey into three
lots is not contained in the record; thus,we do not have the description of Lot
2 that was conveyed to W.C. Patton.[1]   In addition, the McKenzies did not bring
forth any testimony or other evidence explaining these apparent gaps in their
chain of title.  








Even if the
McKenzies had proved the pre-1911 gaps in their chain of title, Exhibits 7-10
(items (3) through (6), above) do not contain the same description of the
conveyed property.   Indeed, at trial,
Kilpatrick objected to the admission of Exhibits7, 8, and 9, on the basis that
they do not relate to the Property.  We
conclude that the deeds in these exhibits (items (4), (5), and (6) above) do
not contain the same description as that in Exhibit 10 (item (3), above); nor
do Exhibits 7, 8, and 9 appear to convey the same property.  The earliest conveyance shown by the evidence
at trial was from W.C. Patton to G.W. 
Hines (Plaintiffs= Exhibit 10).  This deed states as follows: 

That, we, W.C. Patton and wife
Izora Patton and sister L.G. Patton a feme sole of the County of Jefferson
State of Texas for and in consideration of the sum of five thousand three
hundred fifty dollars, paid by G.W. 
Hines as follows:

cash in hand the receipt of which
is hereby acknowledged have Granted Sold and Conveyed and by these presents do
Grant Sell and Convey unto the said G.W. Hines of the County of Galveston State
of Texas all that certain Lots or tracts of land out of the Jones Shaw League
in Galveston County and recorded in Book 221, Page 578 Deed Records of
Galveston Co Texas hereby referred to and made a part hereof for all the
purposes  Said lot No. 1 beginning at
Stake on Gulf Shore set for S.W. corner of a 100 acre tract deeded to Geo E.
Smith thence 39  : N 
W 4800 varas to shore of East Bay a stake thence with shore at right
angles S.W. 117 varas stake set for N.W. corner of Lot 1/thence S  39  : N  
E 4800 varas to stake on Gulf shore, thence N 62 N E 117 varas place of
beginning    

Said lot No. 2 beginning at stake
on Gulf shore same being S.W. corner of Lot 1 hereinbefore described, thence S
62 N W with shore 246 varas to stake
set for S.W. corner of Lot 2 thence N 39 
: N W 460 varas to stake set for a
N.W. corner of this lot, thence N e 62 N East 130 varas to stake set for a N.E. corner of this lot
2 thence N  39  : N We 4340 varas to a stake on shore
of East Bay, thence N  62 N E 117 varas a stake, thence S
39  : N E 4800 varas place of beginning. 








Also another tract of about 28
acres beginning at S.W. corner of Lot 
No. 2 above last mentioned thence N 39 
: N W along West line of Lots 2 &
3 562 varas, a stake, thence along South line of C.C. pettits tract 268 varas
to East line of the N.W. Lowry 100 tract, thence Southward along Lowry=s East line 562 varas to Gulf
Shore, thence eastward 268 varas to place of beginning containing 28 acres more
or less. 

 

The next deed, from G.W. Hines to W.D.
Blalock (Plaintiffs= Exhibit 9), describes the property
conveyed therein as follows: 

In the Jones Shaw League of land,
on Bolivar Peninsular, Galveston County, Texas:

TRACT No. 1BBeginning at the East line of Lot
No. 1, awarded to L.G. Patton in partition of the estate of C.L. Patton, and
South line of the Right-of-way of the G & I Railroad; Thence Westerly along
the South line of the said railroad right-of-way 570 feet to the Northeast
corner of the land herein conveyed, stake for beginning point; thence South 235
feet, stake for corner; Thence West 300 feet stake for Southwest corner; Thence
North 235 feet, stake for corner; Thence East 300 fee to the place of
beginning;

TRACT No.2BBeginning at the S.E. corner of the
above described tract, South 355 feet for the beginning point; Thence West 300
feet, Thence South to the deep water of Gulf Shore; Thence East 300 feet;
Thence North to the place of beginning. 

TRACT No. 3BBeginning at the Southeast corner
of Lot 3, awarded to the Davis heirs in the partition of the estate of Mrs.
C.L. Patton and calling for the Southwest corner of Lot 2, land sold in this
deed. 

Thence North 39 : degrees West along the line of Lot
3, 12120 feet stake, the Northwest corner of Lot No. 2; Thence East 645 feet to
the Northeast corner of Lot No. 1; Thence Southerly in a parallel line with Lot
No. 3, 12120 feet stake (iron) for corner on the North side of the Reed Brake
at the foot of Main Ridge; Thence Westerly 645 feet to the place of beginning,
containing 176 acres, more or less subject to the Railroad rights of way. 

 








It is apparent from the face of these deeds that the
description of the conveyed property, particularly Lot 2, was not the same in
Plaintiffs= Exhibit 9 as in Plaintiffs= Exhibit 10.  The next deed, from W.D. Blalock back to G.W.
Hines  (Plaintiffs= Exhibit 8), describes the property
conveyed therein as follows: 

 

all of that certain Parcel of land,
Tract No. 3 beginning at the Southeast corner of Lot No. 3, awarded to the
Davis Heirs in the partition of the Esate of Mrs. C.L. Patton, and calling for
the South West corner of Lot No. 2 Thence North 39 : degrees west along the line of Lot
No. 3 Thence North about 1400 feet more or less to the North line of the G
& I Railroad, for a beginning point. Thence East 332 2 FeetBthence Northerly in parallel with
Lot No. 3 to bay shoreBThence Westerly 322 2 feet to the NorthWest corner of
Lot 2 Thence back to place, of beginning, containing about 80 acres. 

 

The property in this conveyance is also
not the same property as conveyed in Plaintiffs= Exhibit 10.  

The final deed at
issue, from G.W. Hines to his wife Elizabeth Hines (Plaintiffs= Exhibit 7),
describes the property conveyed therein as follows: 

all my right, title, and interest
in and to that certain tract or parcel of land lying in the County of Galveston
and State of Texas, described as follows, to-wit: 

Tract No. 3,
Beginning at the South East corner of Lot No. 3 awarded to the Davis Heirs in
the partition of the Estate of Mrs. C.L. Patton, and calling for the South West
corner of Lot No. 2; Thence North 39 : degrees West
along the line of Lot No. 3 about 1400 feet more or less to the North line of
the G. & I. Railroad; Thence East 322 2 feet for a
beginning point. Thence North to Bay Shore; Thence West 22 feet Thence South to
the Northline of the G & I Railroad Thence East 22 feet to place of
beginning; Also all my rights, title, and interest in and to any oil rights on
this said described Land. 

It is clear from
of the face of these documents that Plaintiffs= Exhibits 7, 8,
and 9 do not convey the same property. The discrepancy is most apparent with
respect to the Lot 2, as described in Exhibit 10. This discrepancy essentially
determines the outcome of this case. 








Under well-established
Texas law, it was incumbent upon the McKenzies to prevail based upon the
strength of their own title to the Property and not on the weaknesses of
Kilpatrick=s title. 
See Hejl v. Wirth, 161 Tex. 609, 610B11, 343 S.W.2d 226
(Tex. 1961).  The plaintiff may recover
(1) by proving a regular chain of conveyances from the sovereign, (2) by
proving a superior title out of a common source, (3) by proving title by
limitations, or (4) by proving prior possession and that the possession has not
been abandoned.  Rogers v. Ricane
Enterprises, Inc., 884 S.W.2d 763, 768 (Tex. 1994); Turner, 377
S.W.2d at 183. Thus, the burden rested upon the McKenzies, as plaintiffs, to
prove a prima facie right to title and possession by one of these methods. 

Moreover, when, as
in this case, the defendant is shown to be in possession of the land in
controversy and the plaintiffs fail to establish their prima facie right to
title, judgment must be entered in the defendant=s favor. This is
true even though the defendant may have pled a title that he failed to
establish, because under this wellBsettled and
unforgiving law, plaintiffs are not entitled to recover unless their own title
has been affirmatively proven.  See
Hejl, 343 S.W.2d at 227; Kirby Lumber Co. v. Conn, 114 Tex. 104,
112, 263 S.W. 902, 904 (Tex. 1924); See Reese v. Cobb, 105 Tex. 399,
403, 150 S.W. 887, 888-9 (Tex. 1912). 
Although this rule is a harsh one, it has been the law in Texas for more
than a century.  Permian Oil Co. v.
Smith, 129 Tex. 413, 428, 73 S.W.2d 490, 496 (Tex. 1934); French v.
Olive, 67 Tex. 400, 402,  3 S.W. 568,
569 (Tex. 1887);  see also Richardson
v. Houston Oil Co. of Tex., 176 S.W. 628, 630 (Tex. Civ. App.CGalveston 1915,
writ ref=d).








The McKenzies
failed to satisfy their burden of proof in establishing title to the Property
through one of the four acceptable methods in a trespass-to-try-title action.
They did not prove title by limitations or by showing prior possession.  Indeed, the McKenzies admitted at trial that
they were not claiming title to the Property through possession.  The McKenzies did not attempt to prove, or
even assert that they were claiming, title derived through a common source.  Thus, only by establishing a continuous chain
of title back to the sovereign could the McKenzies have established their title
to the Property.  See Land, 377
S.W.2d at 183 (stating that in a trespass to try title case, a plaintiff may
recover by proving a regular and continuous chain of conveyances back to the
sovereign).   Based on the evidence (both
the deeds and oral testimony) admitted at trial and our review of Exhibits
7-10, we conclude that the McKenzies presented no evidence to establish a
regular and continuous chain of title from W.C. Patton (the first conveyance
proven) to Elizabeth Hines with respect to the Property.

In addition, even
if the McKenzies had established a regular and continuous chain of conveyances
dating back to 1911, this showing still would have been insufficient under
Texas law.  The McKenzies had the burden
to prove a regular and continuous chain of conveyances from the Patent of 1846
to W.C. Patton.  The trial court=s findings of fact
and conclusions of law indicate that the other two links in this chain of title
are a conveyance from the State of Texas to Jones Shaw, and a judgment
dividing  Lots 1, 2, and 3 of the Jones
Shaw Survey, conveying Lot 2 to W.C. Patton. 
We are bound by the trial court=s findings and
conclusions that are supported by the evidence and we must indulge every
reasonable presumption in favor of the trial court=s findings and its
judgment.  Mitchell=s, Inc. v. Nelms, 454 S.W.2d 809,
813 (Tex. Civ. App.CDallas, 1970, writ ref=d n.r.e.).  However, these presumptions are not applied
if the findings are challenged or unsupported by the evidence.  Klein v. Cain, 676 S.W.2d 165, 172
(Tex. App.CAmarillo 1984, no writ).  Kilpatrick has specifically attacked the
trial court=s finding number five that the McKenzies
proved continuous title back to the sovereign. 
The trial court=s findings are contrary to the evidence
admitted at trial.  The judgment that
purportedly divided the Jones Shaw Survey into three lots is not in the record
before us, nor (as far as we can discern) was this judgment admitted into
evidence at trial.








Because the record
does not contain a deed or conveyance of the disputed property from the
sovereign to W.C. Patton nor any other testimony or evidence explaining this
disruption in title, we cannot conclude that the McKenzies satisfied their
burden of proving their title back to the sovereign. The McKenzies cannot
satisfy this burden by emphasizing the gaps and imperfections in Kilpatrick=s title, even
though the trial court found several weaknesses in Kilpatrick=s claim to title
to the Property.  Under the applicable
standard of review, we conclude that the evidence is legally insufficient to
support the trial court=s finding that the McKenzies proved a
regular chain of conveyances from the sovereign to the McKenzies.  See City of Keller, 168 S.W.3d at
827.  Accordingly, we sustain Kilpatrick=s first issue,
reverse the trial court=s judgment, and render judgment in favor
of Kilpatrick that the McKenzies take nothing by their trespass-to-try title
suit.  See Hejl, 343 S.W.2d at
226.[2]  

 

 

/s/      Kem Thompson Frost

Justice

 

 

 

Judgment Reversed and Rendered and Opinion filed June 20,
2006.

Panel consists of Justices Hudson, Frost, and Seymore.              











[1]  During oral
argument, counsel and the court discussed the Jones Shaw partition judgment,
mentioned at trial.  It appears from
certain testimony that this partition judgment may have been Plaintiffs= Exhibit 11.  In
addition, there is testimony at trial referring to APlaintiffs= Exhibit
11.@  However, the
record reflects that the trial court did not admit Plaintiffs= Exhibit 11 into evidence, and this exhibit is not in
the appellate record.  In any event, even
if this exhibit were the partition judgment and even if this judgment had been
admitted into evidence, it would not change the result in this case because our
record still does not contain any evidence of the very first conveyanceCthe State of Texas to Jones Shaw.





[2]  Because the
law requires us to render judgment in favor of Kilpatrick in this case, we need
not reach Kilpatrick=s second issue on appeal asserting error with respect
to his claim for improvements on the Property.