Bradford **KILPATRICK**, Appellant,

v.

**Marion Judy McKENZIE and Randall McKenzie, Appellees.**

**No. 14–04–00986–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

June 20, 2006.

208

Robert Bruce Dunham, for appellant.

J. Michael Fieglein, for appellee.

Panel consists of Justices HUDSON, FROST, and SEYMORE.

## OPINION

KEM THOMPSON FROST, Justice.

This appeal stems from a bench trial in an action for trespass to try title. The trial court rendered judgment in favor of the plaintiffs/appellees, who claimed title by deed. Challenging the adverse judgment, the defendant/appellant asserts, among other things, that there is no evidence to support the trial court's finding that the record title of the plaintiffs/appellees is traced back to the sovereign with a clear chain of title. We reverse and render judgment in favor of the defendant/appellant.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Each of the parties to this suit claims title to property located in the Sandy Beach Subdivision in Crystal Beach, Galveston County, Texas, more particularly

described as the West 42.3 feet of Lot 2, Block "L," as well as Lot 2, Block "M" and Lot 13, Block "N" (hereinafter the "Property"). Appellees Marion Judy McKenzie and Randall McKenzie, plaintiffs in the trial court, claim title by deed filed of record. The McKenzies sued appellant Bradford Kilpatrick, the defendant below. Kilpatrick filed a counterclaim seeking title by limitations.

On or about September 23, 1995, Gladys Meynig conveyed the Property to Marion McKenzie by quitclaim deed. At the time of this conveyance, an inspection of the Property revealed no evidence of anyone in possession. The Property was vacant, unimproved real estate. Two months later, on November 29, 1995, this transaction was memorialized by a warranty deed. On August 9, 2000, Marion McKenzie conveyed the Property to her husband Randall McKenzie.

Apparently, on February 10, 1994, J.C. McKnight delivered a warranty deed to Kilpatrick that purported to convey twelve lots or tracts of land, including the Property. These twelve lots purportedly conveyed to Kilpatrick were the subject of prior deeds that trace back to the filing of a subdivision plat in 1985.

In the beginning of 1995, Kilpatrick moved a camper and bus onto a portion of the Property. Though he did not live on the Property, he periodically stayed there overnight. Kilpatrick apparently erected a power pole and stored materials on the adjacent land, but he never fenced the adjacent property or attempted to segregate it from the Property.

On June 26, 1999, the McKenzies gave written notice to all persons who claimed any record interest in the title to the Property, notifying them to verify the validity of their claims. Kilpatrick received this notice. At that time, Kilpatrick had not placed any structure on the Property. La-

ter, however, Kilpatrick moved a house onto the Property. The McKenzies notified Kilpatrick of their alleged record title to the Property and told him that his title was not valid and could not be traced back to anyone who owned the Property. The matter was not resolved.

The McKenzies brought a trespass-to-try title suit against Kilpatrick, who filed an answer alleging title to the Property by limitations. Kilpatrick also asserted a counterclaim for the value of improvements. Kilpatrick allegedly did not make these improvements until he received notice of the McKenzies' title.

Following a bench trial, the trial court rendered judgment in favor of the McKenzies and entered findings of facts and conclusions of law, specifically finding, among other things, the following:

(1) The Property was included in the conveyance to Marion McKenzie from Gladys Meynig memorialized in a warranty deed on November 29, 1995;

(2) Marion McKenzie, by warranty deed, conveyed the Property to her husband, Randall McKenzie on August 9, 2000;

(3) At the time of the conveyance to Marion McKenzie, Gladys Meynig was the record holder of the Property, which is a subdivision in Galveston County, Texas and included in the 4.55 acre tract;

(4) the record title owner of the Property is Randall McKenzie pursuant to a warranty deed from Marion McKenzie dated August 9, 2000;

(5) The record title of Randall McKenzie is traced back to the sovereign by a regular chain of conveyances;

(6) Bradford Kilpatrick had actual notice of the claims of Gladys Meynig and Marion McKenzie to the Property. Kilpatrick also had constructive notice of the claims of Marion McKenzie upon her

recordation of the deed on September 23, 1995;

(7) Kilpatrick had actual and constructive notice to vacate the Property before commencing any improvements thereon;

(8) Kilpatrick did not openly, notoriously, or continuously possess or maintain possession of the Property prior to the demand made on him to vacate;

(9) There is no evidence of any chain of title to the Property from any grantor of Kilpatrick or prior grantor before March 9, 1985;

(10) There is no evidence that either J.C. McKnight (who purportedly conveyed the Property to Kilpatrick) or his purported grantors had any possession rights to the Property or adversely possessed the Property;

(11) Kilpatrick did not fence, cultivate, or otherwise openly and notoriously maintain peaceful possession of the Property; and

(12) Kilpatrick made all improvements to the Property with actual and/or constructive notice of the claim of title of the McKenzies.

## II. Issues Presented

Kilpatrick asserts two points on appeal:

(1) The trial court erred in entering judgment in favor of the McKenzies with respect to title to the Property because there is no evidence to support the trial court's finding that they have a clear chain of title back to the sovereign; and

(2) The trial court erred in failing to find in favor of Kilpatrick on his claim for improvements under section 22.021 of the Texas Property Code.

## III. Standard of Review

Findings of fact in a bench trial have the same force and dignity as a jury verdict, and thus they are reviewed for legal sufficiency of the evidence under the same standards applied to the appellate review of a jury's findings. *Catalina v. Blasdel,* 881 S.W.2d 295, 297 (Tex.1994). In determining whether legally sufficient evidence supports the trial court's findings of fact, we consider the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *See City of Keller v. Wilson,* 168 S.W.3d 802, 822 (Tex.2005). We must credit favorable evidence if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not. *See id.* at 827. We must determine whether the evidence at trial would enable a reasonable and fair-minded person to find the facts at issue. *See id.* The factfinder is the sole judge of the credibility of the witnesses and the weight to give their testimony. *See id.* at 819. Evidence is conclusive only if reasonable people could not differ in their conclusions. *See id.* at 816.

## IV. Analysis

■ A trespass-to-try-title action is a procedure by which claims to title or the right of possession may be adjudicated. *Yoast v. Yoast,* 649 S.W.2d 289, 292 (Tex. 1983). A plaintiff must recover upon the strength of his own title. *Hunt v. Heaton,* 643 S.W.2d 677, 679 (Tex.1982); *Land v. Turner,* 377 S.W.2d 181, 183 (Tex.1964). Thus, in addressing Kilpatrick's first issue, we focus on the McKenzies' proof of title to the Property, and examine every link in the chain of title.

Kilpatrick contends that the trial court erred in rendering judgment in favor of the McKenzies because they did not provide evidence of their chain of title back to

the sovereign. More specifically, Kilpatrick challenges the legal sufficiency of the evidence supporting the trial court's finding number five that the record title of Randall McKenzie is traced back to the sovereign with a clear chain of title.

The trial court found that the McKenzies traced their chain of title back to the sovereign by the following chain of conveyances:

(1) State of Texas to Jones Shaw;

(2) Judgment dividing Lots 1, 2, and 3 of the Jones Shaw Survey, Lot 2 to W.C. Patton;

(3) W.C. Patton, et al. to G.W. Hines, dated April 5, 1911, filed for record April 17, 1911;

(4) G.W. Hines, et. ux., to W.D. Blalock, dated December 14, 1921, filed for record May 8, 1922;

(5) W.D. Blalock, et. ux., to G.W. Hines, dated May 2, 1924, filed for record May 8, 1924;

(6) G.W. Hines to Elizabeth Hines, dated June 16, 1925, filed for record July 8, 1925;

(7) Elizabeth Hines to Harold Hines, dated June 27, 1936, filed for record August 20, 1936;

(8) Harold Hines to Ona E. Bautier, dated February 25, 1952, filed for record February 28, 1952;

(9) Ona E. Bautier to Gladys Meynig, dated August 23, 1952, filed for record September 18, 1952;

(10) Gladys Meynig to Marion Judy McKenzie, dated June 23, 1995, filed for record June 26, 1995; and

(11) Marion Judy McKenzie to Randall McKenzie, dated August 9, 2000, filed for record, Reference File # 20042202, Film Code # 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.

A review of the record reveals no evidence to support links (1) or (2), above. The McKenzies did not offer any proof of their chain of title for the period before 1911. The first deed entered into evidence was item (3), above, from W.C. Patton, Izora Patton, and L.G. Patton to G.W. Hines, dated April 5, 1911, filed for record April 17, 1911. Although the trial court's findings of fact and conclusions of law seem to indicate that the other two links in this chain of title are a patent from the State of Texas to Jones Shaw, and a judgment dividing Lots 1, 2, and 3 of the Jones Shaw Survey, conveying Lot 2 to W.C. Patton, we cannot conclude that this evidence is sufficient to establish a complete chain of title back to the sovereign. The judgment that allegedly divided the Jones Shaw Survey into three lots is not contained in the record; thus, we do not have the description of Lot 2 that was conveyed to W.C. Patton.[1] In addition, the McKenzies did not bring forth any testimony or other evidence explaining these apparent gaps in their chain of title.

Even if the McKenzies had proved the pre-1911 gaps in their chain of title, Exhibits 7–10 (items (3) through (6), above) do not contain the same description of the conveyed property. Indeed, at trial, Kil-

---

1. During oral argument, counsel and the court discussed the Jones Shaw partition judgment, mentioned at trial. It appears from certain testimony that this partition judgment may have been Plaintiffs' Exhibit 11. In addition, there is testimony at trial referring to "Plaintiffs' Exhibit 11." However, the record reflects that the trial court did not admit Plaintiffs' Exhibit 11 into evidence, and this exhibit is not in the appellate record. In any event, even if this exhibit were the partition judgment and even if this judgment had been admitted into evidence, it would not change the result in this case because our record still does not contain any evidence of the very first conveyance—the State of Texas to Jones Shaw.

patrick objected to the admission of Exhibits 7, 8, and 9, on the basis that they do not relate to the Property. We conclude that the deeds in these exhibits (items (4), (5), and (6) above) do not contain the same description as that in Exhibit 10 (item (3), above); nor do Exhibits 7, 8, and 9 appear to convey the same property. The earliest conveyance shown by the evidence at trial was from W.C. Patton to G.W. Hines (Plaintiffs' Exhibit 10). This deed states as follows:

> That, we, W.C. Patton and wife Izora Patton and sister L.G. Patton a feme sole of the County of Jefferson State of Texas for and in consideration of the sum of five thousand three hundred fifty dollars, paid by G.W. Hines as follows: cash in hand the receipt of which is hereby acknowledged have Granted Sold and Conveyed and by these presents do Grant Sell and Convey unto the said G.W. Hines of the County of Galveston State of Texas all that certain Lots or tracts of land out of the Jones Shaw League in Galveston County and recorded in Book 221, Page 578 Deed Records of Galveston Co Texas hereby referred to and made a part hereof for all the purposes Said lot No. 1 beginning at Stake on Gulf Shore set for S.W. corner of a 100 acre tract deeded to Geo E. Smith thence 39¾ ° W 4800 varas to shore of East Bay a stake thence with shore at right angles S.W. 117 varas stake set for N.W. corner of Lot 1/thence S 39¾ ° E 4800 varas to stake on Gulf shore, thence N 62 ° E 117 varas place of beginning
>
> Said lot No. 2 beginning at stake on Gulf shore same being S.W. corner of Lot 1 hereinbefore described, thence S 62 ° W with shore 246 varas to stake set for S.W. corner of Lot 2 thence N 39¾ ° W 460 varas to stake set for a N.W. corner of this lot, thence N e 62 ° East 130 varas to stake set for a N.E. corner of

> this lot 2 thence N 39¾ ° We 4340 varas to a stake on shore of East Bay, thence N 62 ° E 117 varas a stake, thence S 39¾ ° E 4800 varas place of beginning.
>
> Also another tract of about 28 acres beginning at S.W. corner of Lot No. 2 above last mentioned thence N 39¾ ° W along West line of Lots 2 & 3 562 varas, a stake, thence along South line of C.C. pettits tract 268 varas to East line of the N.W. Lowry 100 tract, thence Southward along Lowry's East line 562 varas to Gulf Shore, thence eastward 268 varas to place of beginning containing 28 acres more or less.

The next deed, from G.W. Hines to W.D. Blalock (Plaintiffs' Exhibit 9), describes the property conveyed therein as follows:

> In the Jones Shaw League of land, on Bolivar Peninsular, Galveston County, Texas:
>
> TRACT No. 1—Beginning at the East line of Lot No. 1, awarded to L.G. Patton in partition of the estate of C.L. Patton, and South line of the Right-of-way of the G & I Railroad; Thence Westerly along the South line of the said railroad right-of-way 570 feet to the Northeast corner of the land herein conveyed, stake for beginning point; thence South 235 feet, stake for corner; Thence West 300 feet stake for Southwest corner; Thence North 235 feet, stake for corner; Thence East 300 feet to the place of beginning;
>
> TRACT No.2—Beginning at the S.E. corner of the above described tract, South 355 feet for the beginning point; Thence West 300 feet, Thence South to the deep water of Gulf Shore; Thence East 300 feet; Thence North to the place of beginning.
>
> TRACT No. 3—Beginning at the Southeast corner of Lot 3, awarded to the Davis heirs in the partition of the estate

of Mrs. C.L. Patton and calling for the Southwest corner of Lot 2, land sold in this deed.

Thence North 39¾ degrees West along the line of Lot 3, 12120 feet stake, the Northwest corner of Lot No. 2; Thence East 645 feet to the Northeast corner of Lot No. 1; Thence Southerly in a parallel line with Lot No. 3, 12120 feet stake (iron) for corner on the North side of the Reed Brake at the foot of Main Ridge; Thence Westerly 645 feet to the place of beginning, containing 176 acres, more or less subject to the Railroad rights of way.

It is apparent from the face of these deeds that the description of the conveyed property, particularly Lot 2, was not the same in Plaintiffs' Exhibit 9 as in Plaintiffs' Exhibit 10. The next deed, from W.D. Blalock back to G.W. Hines (Plaintiffs' Exhibit 8), describes the property conveyed therein as follows:

all of that certain Parcel of land, Tract No. 3 beginning at the Southeast corner of Lot No. 3, awarded to the Davis Heirs in the partition of the Estate of Mrs. C.L. Patton, and calling for the South West corner of Lot No. 2 Thence North 39¾ degrees west along the line of Lot No. 3 Thence North about 1400 feet more or less to the North line of the G & I Railroad, for a beginning point. Thence East 332½ Feet—thence Northerly in parallel with Lot No. 3 to bay shore—Thence Westerly 322½ feet to the NorthWest corner of Lot 2 Thence back to place, of beginning, containing about 80 acres.

The property in this conveyance is also not the same property as conveyed in Plaintiffs' Exhibit 10.

The final deed at issue, from G.W. Hines to his wife Elizabeth Hines (Plaintiffs' Exhibit 7), describes the property conveyed therein as follows:

all my right, title, and interest in and to that certain tract or parcel of land lying in the County of Galveston and State of Texas, described as follows, to-wit:

Tract No. 3, Beginning at the South East corner of Lot No. 3 awarded to the Davis Heirs in the partition of the Estate of Mrs. C.L. Patton, and calling for the South West corner of Lot No. 2; Thence North 39¾ degrees West along the line of Lot No. 3 about 1400 feet more or less to the North line of the G. & I. Railroad; Thence East 322½ feet for a beginning point. Thence North to Bay Shore; Thence West 22 feet Thence South to the Northline of the G & I Railroad Thence East 22 feet to place of beginning; Also all my rights, title, and interest in and to any oil rights on this said described Land.

It is clear from of the face of these documents that Plaintiffs' Exhibits 7, 8, and 9 do not convey the same property. The discrepancy is most apparent with respect to the Lot 2, as described in Exhibit 10. This discrepancy essentially determines the outcome of this case.

■ Under well-established Texas law, it was incumbent upon the McKenzies to prevail based upon the strength of their own title to the Property and not on the weaknesses of Kilpatrick's title. *See Hejl v. Wirth*, 161 Tex. 609, 610–11, 343 S.W.2d 226 (Tex.1961). The plaintiff may recover (1) by proving a regular chain of conveyances from the sovereign, (2) by proving a superior title out of a common source, (3) by proving title by limitations, or (4) by proving prior possession and that the possession has not been abandoned. *Rogers v. Ricane Enterprises, Inc.*, 884 S.W.2d 763, 768 (Tex.1994); *Turner*, 377 S.W.2d at 183. Thus, the burden rested upon the McKenzies, as plaintiffs, to prove a prima

facie right to title and possession by one of these methods.

Moreover, when, as in this case, the defendant is shown to be in possession of the land in controversy and the plaintiffs fail to establish their prima facie right to title, judgment must be entered in the defendant's favor. This is true even though the defendant may have pled a title that he failed to establish, because under this well-settled and unforgiving law, plaintiffs are not entitled to recover unless their own title has been affirmatively proven. *See Hejl*, 343 S.W.2d at 227; *Kirby Lumber Co. v. Conn*, 114 Tex. 104, 112, 263 S.W. 902, 904 (Tex.1924); *See Reese v. Cobb*, 105 Tex. 399, 403, 150 S.W. 887, 888–9 (Tex.1912). Although this rule is a harsh one, it has been the law in Texas for more than a century. *Permian Oil Co. v. Smith*, 129 Tex. 413, 428, 73 S.W.2d 490, 496 (Tex.1934); *French v. Olive*, 67 Tex. 400, 402, 3 S.W. 568, 569 (Tex.1887); *see also Richardson v. Houston Oil Co. of Tex.*, 176 S.W. 628, 630 (Tex.Civ.App.-Galveston 1915, writ ref'd).

The McKenzies failed to satisfy their burden of proof in establishing title to the Property through one of the four acceptable methods in a trespass-to-try-title action. They did not prove title by limitations or by showing prior possession. Indeed, the McKenzies admitted at trial that they were not claiming title to the Property through possession. The McKenzies did not attempt to prove, or even assert that they were claiming, title derived through a common source. Thus, only by establishing a continuous chain of title back to the sovereign could the McKenzies have established their title to the Property. *See Land*, 377 S.W.2d at 183 (stating that in a trespass to try title case, a plaintiff may recover by proving a regular and continuous chain of conveyances back to the sovereign). Based on the evidence (both the deeds and oral testimony) admitted at trial and our review of Exhibits 7–10, we conclude that the McKenzies presented no evidence to establish a regular and continuous chain of title from W.C. Patton (the first conveyance proven) to Elizabeth Hines with respect to the Property.

In addition, even if the McKenzies had established a regular and continuous chain of conveyances dating back to 1911, this showing still would have been insufficient under Texas law. The McKenzies had the burden to prove a regular and continuous chain of conveyances from the Patent of 1846 to W.C. Patton. The trial court's findings of fact and conclusions of law indicate that the other two links in this chain of title are a conveyance from the State of Texas to Jones Shaw, and a judgment dividing Lots 1, 2, and 3 of the Jones Shaw Survey, conveying Lot 2 to W.C. Patton. We are bound by the trial court's findings and conclusions that are supported by the evidence and we must indulge every reasonable presumption in favor of the trial court's findings and its judgment. *Mitchell's, Inc. v. Nelms*, 454 S.W.2d 809, 813 (Tex.Civ.App.-Dallas, 1970, writ ref'd n.r.e.). However, these presumptions are not applied if the findings are challenged or unsupported by the evidence. *Klein v. Cain*, 676 S.W.2d 165, 172 (Tex.App.-Amarillo 1984, no writ). Kilpatrick has specifically attacked the trial court's finding number five that the McKenzies proved continuous title back to the sovereign. The trial court's findings are contrary to the evidence admitted at trial. The judgment that purportedly divided the Jones Shaw Survey into three lots is not in the record before us, nor (as far as we can discern) was this judgment admitted into evidence at trial.

Because the record does not contain a deed or conveyance of the disputed prop-

erty from the sovereign to W.C. Patton nor any other testimony or evidence explaining this disruption in title, we cannot conclude that the McKenzies satisfied their burden of proving their title back to the sovereign. The McKenzies cannot satisfy this burden by emphasizing the gaps and imperfections in Kilpatrick's title, even though the trial court found several weaknesses in Kilpatrick's claim to title to the Property. Under the applicable standard of review, we conclude that the evidence is legally insufficient to support the trial court's finding that the McKenzies proved a regular chain of conveyances from the sovereign to the McKenzies. *See City of Keller*, 168 S.W.3d at 827. Accordingly, we sustain Kilpatrick's first issue, reverse the trial court's judgment, and render judgment in favor of Kilpatrick that the McKenzies take nothing by their trespass-to-try title suit. *See Hejl*, 343 S.W.2d at 226.[2]

---

2. Because the law requires us to render judgment in favor of Kilpatrick in this case, we need not reach Kilpatrick's second issue on appeal asserting error with respect to his claim for improvements on the Property.