**Affirmed and Opinion filed December 22, 2011.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-10-00203-CV

---

**MERCEDES MOSBY, Appellant**

**V.**

**POST OAK BANK, Appellee**

---

**On Appeal from the 334th District Court
Harris County, Texas
Trial Court Cause No. 2009-49264**

---

## O P I N I O N

This case involves a dispute over title to real property. An execution-sale purchaser asserted a trespass-to-try-title action, claiming that she held title to the property. A bank purchased the property at a subsequent foreclosure sale on the bank's deed-of-trust lien in the property. The bank disputed the purchaser's assertion of title and sought to remove what it asserts was a cloud on its title caused by the execution deed. Both parties filed motions for summary judgment. The trial court rendered judgment in favor of the bank and denied all relief sought by the execution-sale purchaser. We affirm.

# I. Factual and Procedural Background

Appellee Post Oak Bank (the "Bank"), the plaintiff below, was the holder of a deed-of-trust lien on the real property that is the subject of dispute. Specifically, Tinmore Development, Ltd. ("Tinmore"), a Texas limited partnership, executed a deed of trust in favor of Roland L. Williams, Trustee, for the benefit of the Bank, giving the bank a lien on Lot One (1), in Block Nine (9), of Braes Oaks, Section Two (2), a subdivision in Harris County, Texas, according to the map or plat thereof recorded in Volume 32, Page 72, of the Map Records of Harris County, Texas, more commonly known as 3531 Grennoch Lane, Houston, Texas 77025 (the "Property"). This deed of trust was recorded in the Harris County Real Property Records on April 17, 2007. The lien created by the deed of trust was later extended under an Extension of Real Estate Note and Lien (the "Lien").

In the meantime, on September 30, 2008, Harris County Civil Court at Law Number 4 rendered judgment against Tinmore and Pescadita Constructors, Inc. ("Pescadita") and in favor of Morrell Masonry Supply, Inc. (the "Morrell Judgment"). A writ of execution and order of sale were issued on December 9, 2008, ordering that the Property be sold under execution in satisfaction of the Morrell Judgment. A constable conducted an execution sale of the Property on February 3, 2009. The execution sale occurred at a time when the Bank's deed of trust on the Property was on file in the real property records of Harris County, Texas. Appellant/defendant Mercedes Mosby's bid of $4,000 was the high bid at the execution sale. The constable signed a Deed under Execution (the "Execution Deed") conveying to Mosby all estate, right, title, and interest that judgment debtors Tinmore and Pescadita had in the Property.[1] The Execution Deed was recorded in the Harris County Real Property Records on March 18, 2009.

After Tinmore and all parties obligated under the indebtedness secured by the Lien

---

[1] The record does not reflect that Pescadita, the managing general partner of Tinmore, owned any interest in the Property.

defaulted in the payment and performance of this indebtedness, the Bank accelerated the maturity date of the indebtedness and demanded payment in full. On May 8, 2009, the substitute trustee under the deed of trust sent a written notice to Tinmore and all parties obligated under the indebtedness of a foreclosure sale scheduled for June 2, 2009. Neither the Bank nor the substitute trustee sent any written notice to Mosby. On the scheduled date, June 2, 2009, the substitute trustee sold the Property to the Bank at the foreclosure sale (the "Foreclosure"). The substitute trustee signed a Substitute Trustee's Deed (the "Trustee's Deed") conveying the Property to the Bank. The Trustee's Deed was recorded in the Harris County Real Property Records on the same day.

### The Bank's Suit to Remove Cloud on Title

The Bank filed suit against Mosby seeking to remove a cloud on the Bank's title caused by the Execution Deed. The Bank asserted that at the time of the execution sale it held a perfected lien on the Property by virtue of its deed of trust and that neither the Morrell Judgment nor the execution sale could impair the Bank's prior perfected lien. According to the Bank, whatever interest Mosby may have acquired in the Property at the execution sale was subject to the Bank's prior perfected lien. The Bank asserted that the Foreclosure terminated Mosby's inferior interest in the Property and that the Execution Deed created a cloud on the Bank's title to the Property, which the Bank sought to remove.

### Trespass-to-Try-Title Counterclaim

Mosby answered the Bank's suit with a general denial and filed a counterclaim asserting that she held title to the Property by virtue of the Execution Deed. In support of her position, Mosby claimed that (1) the Bank unlawfully dispossessed her of the Property, (2) Mosby was entitled to notice of the Foreclosure, and (3) Mosby sought to "fully enforce her equity of redemption" in the Property. Mosby sought to establish title though a trespass-to-try-title claim.

3

*Motions for Summary Judgment*

The Bank sought summary judgment against Mosby on her counterclaim and in the Bank's favor on its suit to remove cloud on title. Mosby filed a motion for partial summary judgment. After considering the parties' motions for summary judgment, the trial court denied Mosby's motion for partial summary judgment and granted the Bank's motion for summary judgment, ruling that the Execution Deed had created a cloud on the Bank's title to the Property and that Mosby's trespass-to-try-title and equity-of-redemption claims fail as a matter of law. The trial court ruled that Mosby holds no legal, equitable, or other title or interest in the Property, and the trial court rendered judgment that Mosby take nothing on her counterclaim.

## II. ISSUES PRESENTED AND STANDARD OF REVIEW

On appeal, Mosby asserts the trial court erred in denying her motion for partial summary judgment and in granting the Bank's motion for summary judgment. In a traditional motion for summary judgment, if the movant's motion and summary-judgment evidence facially establish its right to judgment as a matter of law, the burden shifts to the nonmovant to raise a genuine, material fact issue sufficient to defeat summary judgment. *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000). In our de novo review of a trial court's summary judgment, we consider all the evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). The evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary-judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007). When, as in this case, the order granting summary judgment does not specify the grounds upon which the trial court relied, we must affirm the summary judgment if any of the independent summary-judgment grounds is meritorious. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000).

## III. ANALYSIS

**A.    Does application of Texas Property Code section 5.004 mean that the execution-sale purchaser holds title to the Property?**

Mosby asserts that, under section 5.004(a) of the Texas Property Code, she holds absolute title to the Property.  In this statute, entitled "Conveyance by Authorized Officer," the Texas Legislature provides as follows:

> (a)  A conveyance of real property by an officer legally authorized to sell the property under a judgment of a court within the state passes absolute title to the property to the purchaser.
>
> (b)  This section does not affect the rights of a person who is not or who does not claim under a party to the conveyance or judgment.

Tex. Prop. Code Ann. § 5.004 (West 2010).

Today, the court addresses an issue of apparent first impression regarding section 5.004.[2]  Notably, the Bank is asserting its rights as purchaser at the Foreclosure.  The Bank is not a party to any conveyance in the Execution Deed, nor does the Bank claim under a party to any such conveyance.  Likewise, the Bank is not a party to the Morrell Judgment, nor does the Bank claim under a party to this judgment.  Therefore, we conclude that, under section 5.004(b), section 5.004(a) does not affect the Bank's rights.[3] *See id*.  Accordingly, section 5.004(a) does not give Mosby title to the Property.

**B.    Did the deed of trust require the Bank to give the execution-sale purchaser notice of the Foreclosure?**

Mosby argues that the deed of trust executed by Tinmore required the Bank to give her notice of foreclosure.  Mosby cites paragraph 23 of the deed of trust, which

---

[2] All statutory references in this opinion are to the Texas Property Code unless otherwise stated.

[3] In addition, presuming for the sake of argument that section 5.004(a) applied to the conveyance of the real property interests conveyed in the Execution Deed, section 5.004(a) would provide that Mosby received absolute title to those interests, which were subject to the Bank's deed-of-trust lien.  The constable did not convey fee simple title to the Property to Mosby.  The constable conveyed whatever interest Tinmore and Pescadita had in the Property to Mosby.

provides that the covenants and agreements in the deed of trust shall inure to the benefit of and be binding upon the respective heirs, successors, assigns and legal representatives of the parties to the deed of trust. This paragraph does not require the Bank to give Mosby notice of the Foreclosure.

Mosby also cites paragraph 28 of the deed of trust, which provides that the deed of trust shall constitute a "Construction Mortgage" for the purposes of article 9 of the Texas Uniform Commercial Code. Mosby argues that Texas Business and Commerce Code section 9.611 required the Bank to give Mosby written notice. *See* Tex. Bus. & Comm. Code Ann. § 9.611 (West 2011). But this statute applies only to dispositions of collateral by a secured party under Texas Business and Commerce Code section 9.610, and the Foreclosure was not a disposition of collateral under this section. *See id*. §§ 9.610, 9.611. The deed of trust's status as a "Construction Mortgage" for article 9 purposes and Texas Business and Commerce Code section 9.611 did not impose on the Bank any obligation to give Mosby notice of the Foreclosure. *See id*. The deed of trust did not require the Bank to give Mosby notice of the Foreclosure.

**C.    Did equity require the Bank to give the execution-sale purchaser notice of the Foreclosure?**

Mosby asserts that, if section 5.004(a) did not vest title to the Property in Mosby, then she received whatever interest Tinmore had in the Property. If so, then, Mosby argues, "equity demands" that the Bank shall have given Mosby notice of the Foreclosure. The summary-judgment evidence proves as a matter of law that the Bank followed all applicable procedures in section 51.002 regarding the Foreclosure. These procedural requirements included posting a notice of sale at least 21 days before the Foreclosure at the courthouse door of Harris County and serving written notice of the sale on each debtor who, according to the records of the mortgage servicer, was obligated to pay the debt. *See* Tex. Prop. Code Ann. § 51.002 (West 2010).

Mosby does not argue that the Bank failed to follow these procedures. Instead, she asserts that equity required the Bank to provide her with specific written notice of the impending foreclosure sale. Mosby cites no authority that would require the Bank to give

her such notice. Section 51.002 did not require the Bank to serve such notice on Mosby, and we conclude that invoking equitable principles to require such notice would be contrary to section 51.002. *See Lawson v. Gibbs*, 591 S.W.2d 292, 295 (Tex. Civ. App.—Houston [14th Dist.] 1979, writ ref'd n.r.e.) (holding that party foreclosing on real property was not required to provide written notice to current owner of the real property because the predecessor statute to section 51.002 did not require such notice). Therefore, equity did not require the Bank to provide Mosby with written notice of the Foreclosure.[4] *See* Tex. Prop. Code Ann. § 51.002; *Lawson*, 591 S.W.2d at 295. And, its failure to do so provides no basis to deny the Bank's motion for summary judgment.

**D.     Does the evidence raise a fact issue as to whether the execution-sale purchaser holds title to the Property based upon a regular and continuous chain of conveyances going back to the sovereign?**

One of the ways in which Mosby could succeed in her counterclaim for trespass to try title is to show that she has title to the Property through a regular and continuous chain of conveyances going back to the sovereign. *See Kilpatrick v. McKenzie*, 230 S.W.3d 207, 214 (Tex. App.—Houston [14th Dist.] 2006, no pet.). Mosby asserts that she holds title in a conveyance directly from a "sovereign," whom she asserts is the constable who signed the Execution Deed. The cases indicate that this chain of conveyances should go back to a governmental entity that previously held title to the land. *See id*. at 210–14. The constable did not hold title to the Property; rather, he signed the Execution Deed pursuant to a writ of execution. The Execution Deed did not convey the Property; it conveyed whatever interest Tinmore had in the Property. In her summary-judgment evidence, Mosby did not raise a fact issue as to whether Tinmore

---

[4] Mosby also asserts that by its actions, the Bank has sought to deny Mosby her equitable right to redeem the Property. Mosby does not claim a statutory right of redemption, and the only case she cites for an equitable right of redemption is not on point because it involves judicial foreclosure rather than nonjudicial foreclosure under section 51.002. *See McDonald v. Miller*, 39 S.W. 89, 95–96 (Tex. 1897); *see also Hampshire v. Greeves*, 143 S.W. 147, 150 (Tex. 1912) (concluding that a "junior encumbrancer" is not entitled to notice of a nonjudicial foreclosure sale under a deed of trust and that a properly conducted nonjudicial foreclosure sale under a deed of trust cuts off any right of redemption held by a junior lienholder).

held an interest in the Property that would not be extinguished by the Foreclosure. The summary-judgment evidence does not raise a fact issue as to whether Mosby holds title to the Property through a regular and continuous chain of conveyances going back to the sovereign.

## E. Did the Bank wrongfully extend the note and deed-of-trust lien?

Mosby argues that the Bank wrongfully extended the note and deed-of-trust lien rather than foreclosing on the Property when Tinmore defaulted under paragraph 21 of the deed of trust. But, under the unambiguous language of paragraph 21, it applies only to sales, assignments, mortgages, or other transfers of the Property by Tinmore without the prior written consent of the Bank. Mosby argues that the execution sale violated this paragraph, but that sale was not a voluntary sale or a transfer of the Property that would be the subject of paragraph 21. The summary-judgment evidence does not raise a fact issue as to whether Tinmore violated paragraph 21 of the deed of trust. Mosby's argument that the Bank wrongfully extended the note and deed-of-trust lien lacks merit.[5]

## F. Was there a presumption that the note was paid and the deed-of-trust lien extinguished?

Mosby argues that the maturity date of the note was July 12, 2008, yet the Bank did not record an extension of the note and deed-of-trust lien until March 13, 2009. Therefore, Mosby argues, she was entitled to presume that the note and deed-of-trust lien were extinguished on February 3, 2009, when she was the successful bidder at the execution sale. The only authority Mosby cites is *Woodside Assurance, Inc. v. N.K. Resources, Inc.* *See* 175 S.W.3d 421, 425 (Tex. App.—Houston [1st Dist.] 2005, no pet.). But this case states that there is a conclusive presumption that the lien debt is paid if there is no recorded renewal or extension within four years of the maturity date stated

---

[5] To the extent Mosby asserts that the Bank waived its right to foreclose on the Property, she has waived this argument by failing to provide any analysis, citations to the record, or legal authorities in support of this argument. *See* Tex. R. App. P. 38.1(i); *San Saba Energy, L.P. v. Crawford*, 171 S.W.3d 323, 338 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

in the original deed-of-trust instrument. *See id.* On February 3, 2009, less than four years had passed since July 12, 2008, the maturity date of the note. The *Woodside* case does not support any presumption on these facts. Mosby's argument lacks merit.[6]

### G. Can this court review the trial court's denial of the execution-sale purchaser's motion for partial summary judgment?

In her first issue, Mosby asserts that the trial court erred in denying her motion for partial summary judgment. In that motion, Mosby did not seek a final judgment, and this court may not review the trial court's denial of that motion. *See CU Lloyd's of Tex. v. Feldman*, 977 S.W.2d 568, 569 (Tex. 1998) (stating that, before a court of appeals may review order denying a cross-motion for summary judgment not covered by an interlocutory appeal statute, both parties must have sought final judgment in their cross-motions, unless an exception applies that is not applicable to the instant case).

## IV. CONCLUSION

Under the Execution Deed, Mosby obtained whatever interest Tinmore had in the Property. This interest was subject to the Lien. Foreclosure of the Bank's superior lien interest in the Property terminated all right, title or interest Mosby held in the Property. Mosby was not entitled to any notice of the intended foreclosure of the Bank's superior lien under any applicable Texas law. Mosby's equity of redemption, if she ever had any, was lost upon the Bank's proper foreclosure of its superior deed-of-trust lien in the Property. Having rejected all of Mosby's arguments, we conclude that the trial court did not err in granting the Bank's motion for summary judgment. The trial court's judgment

---

[6] Mosby refers in her appellate briefing to the special exception that she asserted in the trial court against the Bank's summary-judgment motion. Because the record does not contain any ruling by the trial court on this special exception, Mosby failed to preserve error in this regard. *See Franco v. Slavonic Mut. Fire Ins. Ass'n*, 154 S.W.3d 777, 784–85 (Tex. App.—Houston [14th Dist.] 2004, no pet.).

is affirmed.

/s/     Kem Thompson Frost
        Justice


Panel consists of Chief Justice Adele Hedges and Justices Frost and Christopher.

10