**Affirmed and Memorandum Opinion filed July 11, 2019.**



In The

# 𝕱𝖔𝖚𝖗𝖙𝖊𝖊𝖓𝖙𝖍 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝕬𝖕𝖕𝖊𝖆𝖑𝖘

## NO. 14-17-00562-CV

## SHARON BROOKS, INDIVIDUALLY AND AS ADMINISTRATRIX OF THE ESTATE OF ANN C. BROOKS, Appellant

### V.

## DALE A. BINGER, JR., JOSEPH HUNTER, BILL WATKINS, AND MARSHA WATKINS, Appellees

**On Appeal from the 239th District Court**
**Brazoria County, Texas**
**Trial Court Cause No. 78706-CV**

## MEMORANDUM OPINION

In this appeal, trespass-to-try-title plaintiffs ask this court to consider whether the trial court erred in admitting an alleged contract for deed and in concluding that the defendant proved that he holds title to the real property. Finding any such error harmless because the plaintiffs did not conclusively prove their right to title and possession under any of the four methods available in a trespass-to-try-title context, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Incorporated in 1964, B$^2$ Towing Company, Inc. was a Texas corporation until it was dissolved in 1988. B$^2$ Towing has not been reinstated.

Claude Brooks was the majority owner of B$^2$ Towing. Claude and his wife Ann were the parents of five children—Sharon Brooks, Christopher Brooks, David Brooks, Alan Brooks, and Robert Brooks. Laquita Binger worked for B$^2$ Towing and was the mother of Darren Binger and appellee/defendant Dale A. Binger, Jr.

In 2014, B$^2$ Towing, the dissolved corporation, as well as "Sharon Brooks, Individually and as Administrator [sic] of the Estate of Ann C. Brooks, Deceased," purportedly filed the original petition that initiated this lawsuit. In this petition, the plaintiffs asserted a trespass-to-try-title claim against Dale seeking a determination of title as to certain real property located at 322 County Road 99 in Alvin, Texas (the "Property").

About one month later, "Sharon Brooks, Individually and as Administratrix of the Estate of Ann C. Brooks, Deceased," filed a First Amended Petition, in which B$^2$ Towing, the dissolved corporation, did not assert any claims or act as a plaintiff. Sharon later filed a Second Amended Petition, which was the live petition at trial and when the trial court rendered judgment. In that petition, the term "Plaintiffs" is defined as "Sharon Brooks, Individually and as Administratrix of the Estate of Ann C. Brooks, Deceased" (the "Plaintiffs"). The Plaintiffs allege that Sharon "represents all of the other heirs of Ann C. Brooks, namely, David Brooks, Robert Brooks, and Alan Brooks," although the Plaintiffs do not allege that any of these three men are a plaintiff in this case. The Plaintiffs allege that in 1974 Claude owned a majority of the shares in B$^2$ Towing and that the other shareholders were Claude's five children as well as Laquita and her son Darren.

In this live petition, the Plaintiffs asserted a trespass-to-try-title claim against Dale seeking a title determination as to the Property. But B$^2$ Towing, the dissolved

2

corporation, did not assert any claims or act as a plaintiff. The Plaintiffs added appellees/defendants Joseph Hunter, Bill Watkins, and Marsha Watkins as defendants and asserted claims against them and Dale for slander of title and for filing a fraudulent lien. The Plaintiffs alleged that the "Plaintiffs, standing in place of the majority shareholders of [B$^2$ Towing] are the lawful majority owners of the [Property]." The Plaintiffs attached to the live petition a copy of a 1976 deed filed in the Brazoria County Real Property Records in which Olin G. Wellborn, Jr. purportedly conveys the Property to B$^2$ Towing (the "Deed").

A witness at trial testified that the Brazoria County Real Property Records contain no instrument in which B$^2$ Towing purports to convey the Property to any party. Evidence at trial showed that Dale has lived on the Property since at least 1983. Dale alleged that in 1983, Dale and Claude, as Trustee for Robert, allegedly executed a one-page contract for deed (the "Contract"), under which Claude, as Trustee for Robert, promised to execute a deed for the Property to Dale if Dale performed all obligations under the Contract.

In 1994, Claude died testate. His wife Ann was the independent executrix, and she filed an inventory that did not reflect any ownership in the Property as an asset of Claude's estate. In 1998, Laquita died. In 2004, Christopher died. In 2009, Dale borrowed money to pay off a property-tax judgment on the Property. In 2011, Ann died testate. Sharon was the executrix of Ann's estate, and Sharon filed an inventory that did not reflect any ownership in the Property as an asset of Ann's estate. In 2014, Dale signed a deed of trust (the "Deed of Trust") to secure payment of the indebtedness he incurred to pay off a property-tax lien on the Property.

After a bench trial, the trial court rendered a final judgment ordering that the Plaintiffs take nothing. In the judgment the trial court denied all claims in the live

3

petition and awarded title to the Property to Dale, free and clear of all of the Plaintiffs' claims.  At the Plaintiffs' request, the trial court issued findings of fact and conclusions of law.

## II.  B² TOWING NOT A PARTY TO THIS APPEAL

The notice of appeal and appellant's brief indicate that B² Towing is an appellant, in addition to the Plaintiffs.  Although the live petition contained no purported claims by the dissolved B² Towing and no allegation that B² Towing was a plaintiff, the trial court recited in its judgment and findings of fact that B² Towing was a plaintiff.

Under former article 7.12(C) of the Texas Business Corporations Act, the Texas Legislature provided that "[a]n existing claim by or against a dissolved corporation shall be extinguished unless an action or proceeding on such existing claim is brought before the expiration of the three-year period following the date of dissolution." Act of May 25, 1991, 72nd Leg., R.S., ch. 901, § 39, 1991 Tex. Gen. Laws 3161, 3188 (current version at Tex. Bus. Orgs. Code Ann. § 11.359).  The trial court's purported adjudication of claims by B² Towing in a lawsuit commenced more than 26 years after B² Towing's dissolution amounted to a nullity, and B² Towing is not an appellant in this case. *See id.*; *Pellow v. Cade*, 990 S.W.2d 307, 312–12 (Tex. App.—Texarkana 1999, no pet.).

## III. ISSUES AND ANALYSIS

The Plaintiffs assert four appellate issues:  (1) whether the trial court erred in admitting the Contract into evidence over the Plaintiffs' objection; (2) whether the Contract is a proper basis for Dale "obtaining 100% of the [Property], 22.22% of the [Property], or none of the [Property]"; (3) whether the evidence supports the trial court's findings of fact and conclusions of law; and (4) whether legally sufficient evidence supports the trial court's conclusion that Dale established title

4

to the Property by adverse possession.

The Plaintiffs have challenged only the trial court's judgment as to the adjudication of the issue of title to the Property.[1] "A trespass to try title action is the method for determining title to lands, tenements, or other real property." Tex. Prop. Code Ann. § 22.001(a). In a trespass-to-try-title action, the plaintiff must recover upon the strength of the plaintiff's own title, and not based on the weaknesses of the defendant's title. *Hunt v. Heaton*, 643 S.W.2d 677, 679 (Tex. 1982); *Hejl v. Wirth*, 343 S.W.2d 226, 226 (Tex. 1961). To recover on their trespass-to-try-title claim the Plaintiffs had to carry the burden at trial to prove a prima facie right to title and possession by one of four methods: (1) by proving a regular chain of conveyances from the sovereign, (2) by proving a superior title out of a common source, (3) by proving title by limitations, or (4) by proving prior possession and that the possession has not been abandoned. *See Kilpatrick v. McKenzie*, 230 S.W.3d 207, 213–14 (Tex. App.—Houston [14th Dist.] 2006, no pet.). Under Texas law, failure to carry the burden kills any chance for a plaintiff to prevail on its trespass-to-try-title claim.

Under their appellate issues, the Plaintiffs have briefed the following arguments: (1) the trial court erred in admitting the Contract into evidence; (2) Dale did not prove that he alone holds title to the Property because he did not show this title based on either the Contract or on adverse possession; and (3) real property and corporate records show that the former B$^2$ Towing shareholders and the heirs of the deceased former shareholders hold legal title to the Property as a matter of law. The first two arguments do not address whether the Plaintiffs proved their right to title and possession. In the third argument, the Plaintiffs

---

[1] The Plaintiffs have not challenged the trial court's judgment as to their claims against Joseph Hunter, Bill Watkins, and Marsha Watkins.

assert that they proved that they hold title, but the Plaintiffs do not assert on appeal that they proved title by any of the four acceptable methods. Without proof by one of these methods, the Plaintiffs cannot succeed in their trespass-to-try-title claim. *See Kilpatrick*, 230 S.W.3d at 214–15.

The trial court ruled against the Plaintiffs in the bench trial, and the trial evidence does not conclusively prove the Plaintiffs' right to title and possession under any of the four methods. *See id*. at 213–15. The only deeds contained in the trial evidence are the Deed of Trust signed by Dale and the first page of the Deed. Dale claimed title based on the Contract purportedly signed by Claude in 1983 as Trustee for Robert and based on adverse possession. The Plaintiffs did not show adverse possession. Nor did they show that they were in prior possession of the Property.

When, as in this case, the defendant is shown to be in possession of the real property in controversy and the plaintiffs fail to establish their prima facie right to title, Texas law commands that judgment be entered in the defendant's favor. *Kilpatrick*, 230 S.W.3d at 214. Even if this judgment is only a judgment that the plaintiffs take nothing, the effect of this judgment is to vest title in the defendant. *See Hejl*, 343 S.W.2d at 226 (stating that "[i]f the plaintiff under the circumstances fails to establish his title, the effect of a judgment of take nothing against him is to vest title in the defendant"); *Wells v. Kansas University Endowment Ass'n*, 825 S.W.2d 483, 487 (Tex. App.—Houston [1st Dist.] 1992, writ denied). This rule applies even though the defendant may have pled a title that he failed to establish, because under this well-settled and unforgiving law, the plaintiffs are not entitled to recover unless they affirmatively prove their own title. *See Hejl*, 343 S.W.2d at 226; *Kilpatrick*, 230 S.W.3d at 214; *Wells*, 825 S.W.2d at 487.

Presuming without deciding that the trial court erred in concluding that Dale proved that he holds title to the Property, any such error would be harmless unless

the Plaintiffs show that they conclusively proved they hold title to the Property under one of the four methods. *See Franzetti v. Franzetti*, 124 S.W.2d 195, 198–99 (Tex. Civ. App.—Austin 1939, writ ref'd); *Wells*, 825 S.W.2d at 487–88. If this court were to reverse the trial court's judgment and render judgment that all parties take nothing, the Plaintiffs still would lose on their trespass-to-try-title claim, and the take-nothing judgment against the Plaintiffs, by itself, would vest title to the Property in Dale. *See Hejl*, 343 S.W.2d at 226; *Wells*, 825 S.W.2d at 487. So, for there to be harmful error, the Plaintiffs must have put on conclusive proof at trial that they hold title to the Property under one of the four methods. *See Franzetti*, 124 S.W.2d at 198–99; *Wells*, 825 S.W.2d at 487–88 (stating that "in a trespass to try title action, the plaintiff is not prejudiced by an adjudication that title rest[s] in a defendant, when the plaintiff fails to establish his own title"). They did not do so.

## IV. CONCLUSION

We conclude that even if the trial court erred in admitting the Contract and even if the trial court erred in concluding that Dale proved that he holds title to the Property, any such error would be harmless. *See Franzetti*, 124 S.W.2d at 198–99; *Wells*, 825 S.W.2d at 487–88. Accordingly, we overrule the Plaintiffs' appellate issues and affirm the trial court's judgment.

/s/    Kem Thompson Frost
Chief Justice

Panel consists of Chief Justice Frost and Justices Zimmerer and Hassan.